# CHARLESTON.

## EARL C. WILLIAMS v. JOHN A. SCHEHL

Submitted September 9, 1919.  Decided September 16, 1919

1.  SERVANT'S KNOWLEDGE OF DEFECTS IN MACHINE—*Declaration.*

    The declaration in this case is not bad on demurrer for omitting to aver knowledge of the defendant of the alleged defective character of the machine doing the injuries complained of.  Such knowledge is sufficiently alleged.  (p. 501).

2.  MASTER AND SERVANT—*Declaration Not Defective as Confessing Contributory Negligence—Assumption of Risk.*

    Nor do the circumstances of the injuries complained of and averred in the declaration sufficiently negative the ignorance of the plaintiff averred, so as to render the declaration bad as confessing contributory negligence and defeating recovery in such common-law action.  But in so far as right of recovery is based on the failure of defendant to provide plaintiff with an instrument to enable him safely to operate the machine, the declaration is defective in failing to also allege plaintiff's reliance on such promise for a reasonable time thereafter.  (p. 501).

3.  SAME—*When Declaration Sufficient in Common Law Action for Injuries.*

    Though not good as a declaration for injuries sustained on the theory that defendant's business was controlled by the Workmen's Compensation Law and his failure to comply therewith depriving him of his common-law defenses, the declaration is good in a common-law action for alleged injuries sustained by plaintiff, his employee, for defective machinery furnished by defendant. (p. 502).

4.  SAME—*When Grocer Selling Meat Not Running Packing House.*

    The business of a retail grocer who also butchers cattle, sheep and hogs at a slaughter house operated in another place, for sale to his retail customers, and who at his grocery store cuts the meat, makes sausage and renders lard from such animals, for sale in a small way, is not engaged in the business of operating a slaughter and packing house within the meaning of schedule "n" of section 18 of the Workmen's Compensation Law of this State. (p. 502).

5.  SAME—*When Retail Dealer Retains Common Law Defenses Under Workmen's Compensation Law.*

    Nor does schedule "x" of said section, nor the general pro-

visions of section 9 of said law, require one conducting such a retail business voluntarily to apply to the Compensation Commissioner to come under said law, or subject him to the penalty of losing his common-law defenses when sued by an employee for injuries sustained due to his alleged negligence in failing to use due care to provide reasonably safe machines and implements or a reasonably safe place for his servant to work.  (p. 507).

6. ERRONEOUS INSTRUCTIONS IGNORING DEFENSE OF CONTRIBUTORY NEGLIGENCE.

Instructions to the jury given at the instance of plaintiff, based on the theory of negligence on the part of defendant, and erroneously assuming that his business was under the Workmen's Compensation Law and his failure to comply therewith and ignoring his theory of contributory negligence on the part of plaintiff, should have been rejected.  (p. 508).

7. TRIAL—*Instruction Assuming Controverted Fact Proven Erroneous.*

An instruction to the jury which assumes as proven a fact controverted by the evidence or as to which there is little if any appreciable evidence, is properly refused.  (p. 508).

8. SAME—*Corrected Instruction Supported by Some Evidence Improperly Refused.*

An instruction stating a correct legal principle applicable to the theory of the proponent, supported by some appreciable evidence, not binding, should be given to the jury.  (p. 508).

Error to Circuit Court, Brooke County.

Action by Earl C. Williams against John A. Schehl.  Verdict and judgment for plaintiff, and defendant brings error.

*Reversed and remanded.*

*Ramsey & Wilkin* and *T. S. Riley,* for plaintiff in error.
*Erskine, Palmer & Curl,* for defendant in error.

MILLER, PRESIDENT:·

The action is ex delicto for the loss of plaintiff's hand, due to the alleged negligence of defendant in furnishing him a defective meat grinder and his failure to furnish him a feeder paddle or other implement necessary safely to operate said machine in the course of his employment.

From the verdict and judgment for plaintiff for one thousand dollars the defendant by writ of error has brought the case here for review.

First, it is complained that the demurrer to the declaration and each of the two counts thereof should have been sustained. We do not find the declaration defective in the first particular pointed out, namely, failure to aver knowledge on the part of defendant of the alleged defective condition of the meat grinder. If necessary to so aver, both counts do charge such knowledge on the part of the defendant.

Secondly, it is argued that if defective, the circumstances of the injury show that plaintiff had as much knowledge of the machine as defendant and with such knowledge continued to operate it, and thereby contributed to his own injury and excused the defendant. But, if, as substantially averred, the defendant's business and the plaintiff's employment fall under the operation of the Workmen's Compensation Law, and defendant failed to comply therewith, contributory negligence constituted no defense to the action. However, the declaration avers as to the feeder paddle that plaintiff was in fact ignorant of the defect alleged until he requested defendant to provide him with such implement, which he failed and neglected to do. If plaintiff as alleged was ignorant of the defects in the machine, of course he could not be chargeable with contributing to his injuries by continuing to work it. We do not think the circumstances averred sufficiently negative his averment of ignorance, as urged by counsel. But as to the feeder paddle the declaration does show knowledge on the part of plaintiff of the alleged need of such an instrument, for he avers that he requested defendant to furnish him with such a paddle, and his promise and failure to do so. But should he not have also averred his reliance on such promise and his belief that defendant would in a reasonable time comply therewith? We are persuaded on authority that such averment should have been made, if plaintiff relied on such negligence as a basis of recovery. *Parfitt* v. *Veneer & Basket Co.,* 68 W. Va. 438, 449-450; *Ashley* v. *Tri-State Lumber Co.,* 79 W. Va. 726. If, as these cases hold, a servant continues in the services of his employer after knowledge of the defect in the machinery he is employed to operate, he will be presumed to

have assumed the risks, when injured thereby. It does not clearly appear whether the verdict and judgment were predicated on the alleged negligence to furnish a safe meat grinder or the omission to furnish a feeder paddle. If under the evidence the pleadings were sufficient, they might be sustained on either theory.

Lastly, it is urged that the demurrer should have been sustained because the business of defendant without his election to come under it, not averred but negatived, does not bring him involuntarily under the Workmen's Compensation Law. Both counts aver that the business of the defendant in which plaintiff was employed to assist him was that of a butcher, and in which he made use of divers pieces of machinery; namely, boilers, engines, motors, pulleys, grinding machines, and divers other implements, tools and devices for preparing meats so butchered by him for the market, and more particularly for the grinding of said meat in order to make the same into sausage. But whether the defendant's business so described in the declaration falls within the purview of the Workmen's Compensation Law or not, we think on demurrer it would be good as averring a good common-law action for negligence of the defendant to use due care to furnish plaintiff a safe place to work, a good machine to work with, and to keep it in good repair, and that the demurrer was therefore properly overruled. We should for this purpose treat the averments regarding the Workmen's Compensation Law and defendant's alleged negligence in failing to comply therewith as surplusage.

The remaining points relied on involve the giving and refusing of instructions to the jury, and the action of the court on the motion of the defendant for a new trial. All six of the instructions requested by plaintiff were given as offered. Of the four requested by defendant, the first and second were given; three and four were refused. Defendant complains of plaintiff's instructions two, three, four, five and six, and of the action of the court in refusing his instructions three and four.

Instructions two, three and four given for plaintiff all assume that the business of the defendant and his liability

to plaintiff were governed by the Workmen's Compensation·
Law and his omission to comply therewith by electing to pay·
the premiums required thereby, and that he was thereby
deprived of his common-law defenses, and particularly that
of the contributory negligence of the plaintiff. This theory·
of these instructions, in the light of the averments of the·
declaration and the facts disclosed by the evidence as to
the nature of the defendant's business, constitute the chief·
objection of the defendant thereto. As already abserved,
the declaration avers that the business of defendant was that·
of a butcher! The plaintiff himself swears that the busi-
ness of defendant was that of a general store, "that he had·
a little of everything—meats and groceries, and· flour, and·
everything." And in describing his employment he says:·
"I got up in the morning, and done my work up at the·
slaughter house, worked about half an hour; then I came·
in to the store, and went out and solicited orders, and
worked around the store, and then in the afternoon they
sent me down in the basement to grind meats, and cook
meats, and that is when I got my hand taken off." Defend-
ant says his business was that of "meats and groceries."
and that the duties of plaintiff were "delivering and taking
orders in the forenoon, and in the afternoon taking care of
the meat end, such as making sausage, or whatever we were
doing; in the store he clerked—received and charged—had
full sway, the same as I have or any of the balance of the
help." And in describing the circumstances of the accident
he says, "he was rendering lard and making this sausage;
it was not a large amount—only a small amount—prob-
ably fifty pounds;" that to make fifty pounds of sausage
on the style of machine used would take probably not more
than twenty minutes, even when grinding it a second time.

The question is thus presented, whether the business of
"butcher" as alleged in the declaration, or that of a general
store in which his business was that of selling meats and gro-
ceries at retail with the incidental business of making sausage
and rendering lard in the small way described in the evidence,
brought the defendant under the involuntary requirements of
the statute so as to render him liable to the plaintiff and the

penalties imposed thereby, and the loss of his common-law defenses as assumed in these instructions. The contention of plaintiff is that the business of defendant brought him within sub-section "n" of section 18 of the act, classifying the industries subject to the act; and if not under that section, then it was comprehended within the provisions of sub-section "x", providing that: "Any industry or business not specified in the foregoing schedules, for which any employer shall voluntarily apply to the commissioner to be brought under the provisions of this act; and the commissioner shall have the authority to classify and place in one of the schedules aforesaid, or any schedule created by him as hereinafter mentioned, any industry or business subject to this act not hereinbefore mentioned." And if not comprehended thereby, the further contention is that it is covered by section 9 of said act, providing that: "All persons, firms, associations and corporations regularly employing other persons for profit, or for the purpose of carrying on any form of industry or business in this state, (casual employment excepted)," etc., and not falling within the business of employers "in domestic and agricultural service", specifically excepted by the act.

The first inquiry then is, does the business of *butcher* alleged, or that of selling *meats and groceries* in a small retail store, such as the evidence discloses in this case, though the meats sold are in whole or in part of animals slaughtered by such retail merchant, fall within schedule "n" of section 18, namely, "slaughter and packing houses, stock yards, soap, tallow, lard and grease manufactories, tanneries, * * * in which power driven machinery is used?" In our opinion such a business does not come within the provisions of this section. If so, then every little merchant who happens to butcher a few animals whose meat he cuts and retails to his customers in a grocery store, of which there are many, would be brought under the act. Perhaps, as counsel argue, the size of the business ought not to be regarded as controlling in the construction of the statute. A statute like this in derogation of the common law, and imposing restrictions upon common occupations of the people, should receive a strict construction. *Rhodes* v. *Coal Co.*, 79 W. Va. 71, point 3 of the

syllabus.   Unless therefore the words of the statute strictly
construed comprehend the business of defendant, it should
by no strained construction be held to include it.   The words
"slaughter and packing houses" readily suggest a business
where animals fit for food are slaughtered and their meats
packed and prepared for market in considerable quantities,
and in which power driven machinery is employed.   Would
anyone think for a moment that the Legislature by these
words meant to include thereunder the business of a corner
grocery where the owner does a retail business in meats and
groceries and slaughters a few animals and cuts them up
and sells their meat at retail in a small way?   We do not
think so.   Strictly speaking the words "slaughter house" may
include any place where animals are killed; there is no pre-
tense that the defendant was engaged in packing meats
or other products.   The proof is that his manufacture of
lard and sausage was for the daily sale thereof to his cus-
tomers in small quantities.   When we examine the various
schedules in section 18, we find that they relate generally to
the business of mining, manufacturing, railroads, operated or
propelled by power driven machinery, telegraph and tele-
phone lines, and construction works of various kinds.   In none
of them do we find dry goods or grocery stores, banks, fruit
stands, jewelry stores, or businesses of like character. Counsel
for plaintiff cite us to three cases: one from Georgia, one
from Indiana, and the other from Louisiana, in support of
their construction of the statute.   The question in the Georgia
case was whether Kehrer, an agent or representative of Nel-
son Morris & Co., was subject to the occupational tax imposed
by the statute upon agents of packing houses doing business
in the state.   It was decided that he was.   There is no ques-
tion made that Morris & Company were large packers in
the state of Illinois.   They maintained a distributing house
in Georgia, where they were represented by Kehrer as agent
or salesman.      It was held that notwithstanding Morris
& Company did not slaughter and pack meats in Georgia
but sold them there through Kehrer, they were doing busi-
ness as packers in Georgia; that selling meats in Georgia
manufactured and packed in Illinois was doing the business

of packers in Georgia; and that Kehrer was subject to the occupational tax. *Stewart* v. *Kehrer,* 115 Ga. 184. The Indiana case was an indictment for burning a mill, described as a mill-house, and upon a motion to quash, the question was whether mill-house was sufficiently descriptive of the offense prescribed by the statute. It was held that it was. The court said: "There are slaughter-houses, packing-houses, smoke-houses etc., indicating houses in which animals are slaughtered, meats packed and smoked etc. So a "mill-house" we think, would readily be understood to be a building or house used for milling purposes." *Ford* v. *State,* 112 Ind. 373, citing *Dugle* v. *State,* 100 Ind. 257. In the Louisiana case the question was whether the defendant was subject to a license tax for "carrying on the business of a slaughter-house" imposed by the statute. The evidence showed that he killed one or two beeves a week, which were raised or pastured on his plantation and sold in his plantation store for which he paid a license as retail merchant and liquor dealer on the public road, and that most of the beeves were purchased originally in New Orleans. The manifest purpose of the statute was revenue, and we think the court rightly held the defendant liable for the tax regardless of the size of his business. *Thibaut, Sheriff,* v. *Herbert,* 45 La. Ann. 838. But our statute must be construed with reference to the legislative intent as manifested by the entire enactment. In two or more of the schedules of section 18 some businesses are exempted. For example, those specified in schedule "m" are limited to factories in which power driven machinery is used; and schedule "v", which includes structural work on buildings, is limited to those over three stories high.

In further support of their proposition counsel for plaintiff rely on the expression of this court in *Louis* v. *Smith-McCormick Construction Co.,* 80 W. Va. 159; and *Adkins* v. *Hope Engineering & Supply Co.,* 81 W. Va. 449, respecting the broad and inclusive scope of section 9 of the act. While in these cases reference is made to the wide scope of this section, the business of the defendant in the first case clearly fell within schedules "v" and "w" of section 18; and in the latter case no question was made as to the fact that defend-

ant's business, that of constructing a gas line, was covered by
one of the schedules of said section. The principal question
was whether on the facts plaintiff was entitled to recover for
personal injuries sustained by his infant son fifteen years
of age employed by defendant, and whether said infant was
an employee as defined by said section 9. The court said
that section makes no distinction as to age limit. What was
said by the court in these cases should be construed with
reference to the questions involved and so as to not do violence
to the legislative intent manifested in the enactment.

But what effect should be given to schedule "x", read
in connection with said section 9? Clearly this schedule, which
is made to cover "any industry or business not specified in
the foregoing schedules, for which an employer shall volun-
tarily apply to the commissioner to be brought under the pro-
visions of this act," does not bring such omitted industry
or business under the act without the voluntary application
of the employer. To be brought under the act such employer
must apply to the commissioner, who must give him a classifi-
cation and rate of premium, unless, the commissioner as he
possibly may do under a subsequent provision of the schedule,
himself bring such employer under the act by exercising the
power thereby conferred. In these provisions the statute
clearly recognizes the two classes; namely, first, those brought
under the act involuntarily as it were by being named in
the several schedules, and required to comply therewith upon
pain of being denied their common-law defenses; and second,
those submitting themselves voluntarily, and when so doing,
all are subject to the act within the meaning of section 9;
but the voluntary classes without such submission, or the
special act of the commissioner, do not become subject to
the act. Nor is such voluntary class of employers denied
any of their common-law rights for neglecting voluntary sub-
mission to the statute. Analogous to the case presented here,
is that of *Barnett, Adm'r.* v. *Coal & Coke Ry. Co.*, 81 W. Va.
251, where we held that section 26 of the statute did not
operate to deprive employers engaged in both intra-state and
inter-state businesses, unless and until, from the time they had
elected, as they might under section 52, by the method pre-

scribed, to come under the act. This notwithstanding the broad and comprehensive scope of section 9.

Our conclusion, therefore, is that plaintiff's instructions two, three, four and six, ignoring and excluding defendant's theory of contributory negligence, and holding him subject to the Workmen's Compensation Law, were erroneous and should have been rejected.

Plaintiff's instruction number five, we think, states the law correctly relative to the liability of the master for failing to comply with his promise to remedy dangerous and defective machinery and to provide a reasonably safe place to work; but as we have already observed, the declaration was defective in not averring reliance of the plaintiff on the defendant's promises and his failure to comply therewith in a reasonable time.

Defendant's instruction number three was, we think, rightly refused. It would have told the jury that if they believed from the evidence plaintiff was a general clerk in defendant's store and performing his duties set forth in the declaration, and as such clerk had access to and right to use the feeders or feeder paddles in said store as are named in the declaration and could have taken and used the same in the performance of his duties, and did not do so at the time of the accident, the jury should find for the defendant. The principal vice of this proposition is that it assumes the fact that there were in the store feeder paddles suitable for such use, or any feeder paddles, facts as to which there was little if any appreciable evidence offered by defendant, and facts which were denied by plaintiff. Whether the defendant was negligent in failing to furnish such an instrument, if one was not provided, or was in the store at the disposal of plaintiff, were questions which might properly have been submitted to the jury by a proper instruction. But the instruction in question was not competent in this respect.

Defendant's instruction number four, we think, states a correct legal proposition applicable to his theory of the case. It would have told the jury that if they believed from the evidence that plaintiff knew there was a rapidly revolving screw at the edge of the lower hopper of the sausage grind-

ing machine testified to in the case, and that his hand was likely to come in contact therewith in attempting to push meat down into the hopper, he must be held to have appreciated the danger and assumed the risk in attempting to do the work. *Louis* v. *Smith-McCormick Construction Co., supra; Ashton* v. *Boston & Maine R. R. Co.,* 222 Mass. 65. The objection of the plaintiff and the ruling of the court thereon are that the instruction ignores the plaintiff's theory of a defective machine and failure to provide a suitable instrument to operate it as the cause of the injury. This would be a good objection if the instruction was a binding one telling the jury to find for the defendant; but it does not do so. It states a correct legal proposition on defendant's theory as to the facts, and was proper to go to the jury.

For the foregoing reasons, the judgment below must be reversed, the verdict set aside, and the defendant awarded a new trial.                                   *Reversed and remanded.*