FOTIS PETROS & another *vs.* SUPERINTENDENT OF BUILDINGS OF LYNN & another.

Essex.    March 7, 1940. — June 26, 1940.

Present: FIELD, C.J., DONAHUE, LUMMUS, & QUA, JJ.

*Zoning.    Food.*

Facts, set forth in a case stated from which it was agreed no inferences were to be drawn, respecting the maintenance in a so called business district in the city of Lynn, in a manner wholly inoffensive, of a store, completely walled off by masonry from other stores in the same building, where live fowl were kept and slaughtered for retail trade, did not demonstrate as a matter of law that such store was not a retail store for retail trade, permitted in a business district under the zoning ordinance of the city, nor show a violation of § 9I inserted in G. L. (Ter. Ed.) c. 94 by St. 1937, c. 362, § 3.

PETITION, filed in the Supreme Judicial Court for the county of Essex on May 17, 1939, for a writ of mandamus.

The case was heard by *Dolan*, J., and was dismissed. The petitioners alleged exceptions.

*E. J. Canning*, (*L. M. Kearns* with him,) for the petitioners.

*P. F. Shanahan*, (*J. F. Doyle* with him,) for the respondents.

QUA, J.    This petition is brought by the owners of a dwelling house "next door" to No. 86 Blossom Street in Lynn to compel the superintendent and inspector of buildings of that city to revoke an "occupancy permit" granted by him under date of April 13, 1939, for the use of the building located at No. 86 "for keeping and killing of fowl, as provided in permit issued by Board of Health" and to

compel this respondent to enforce the "zone ordinance" of Lynn with respect to the premises at No. 86.

We assume, in the absence of any contention to the contrary, that the respondent superintendent and inspector of buildings is charged under §§ 21 and 22 of the "zone ordinance" with the duty of enforcing that ordinance in so far as concerns the matters here involved, and that this petition is properly brought to compel him to perform that duty. *Paul* v. *Selectmen of Scituate,* 301 Mass. 365, 370. See *O'Brien* v. *Turner,* 255 Mass. 84; *Cochran* v. *Roemer,* 287 Mass. 500; *LaMontagne* v. *Kenney,* 288 Mass. 363. The "exclusive" remedy by appeal to the board of appeals and thence to the Superior Court now provided for by G. L. (Ter. Ed.) c. 40, § 30, as inserted by St. 1933, c. 269, § 1, and amended by St. 1935, c. 388, §§ 1, 2, appears not to be available to the petitioners in this instance, since the petitioners are not applicants for a permit, and the remedy they seek cannot be placed within any of the powers of boards of appeal enumerated in the amended § 30. *Turner* v. *Board of Appeals of Milton,* 305 Mass. 189, 192. Compare *Lambert* v. *Board of Appeals of Lowell,* 295 Mass. 224.

The case was tried upon a case stated which it was agreed contained "a true statement of all the material facts bearing upon the issues" and wherein it was further expressly agreed that "no inferences . . . [were] to be drawn from the facts and documents set forth." Where a case is presented in this carefully limited way the plaintiff can prevail only if the court, fairly construing the language used, can read in it without the aid of any inferences of fact every fact essential to a cause of action. *Frati* v. *Jannini,* 226 Mass. 430. G. L. (Ter. Ed.) c. 231, § 126.

The decisive facts appearing in the case stated are now summarized: No. 86 Blossom Street is zoned in a so called business district. The permitted uses of buildings in such districts include (in addition to those permitted in residence and apartment house districts) retail stores, retail trade, shops for custom work, manufacturing incidental to a retail business, offices, banks, restaurants, places of amusement

and a long list of various businesses and occupations which for the most part are neither retail stores nor ordinary manufacturing, such as, for example, barber shops, clothes cleaning, photography, printing, shoe repairing and shining, tailoring, and undertaking. "Accessory uses" that do not "alter the character of the premises" or "impair the neighborhood" are allowed. The ordinance further provides for "light industrial districts" and for "heavy industrial districts." In heavy industrial districts all uses are allowed, although "Abattoirs and stock yards" are to be subject to the permission of the city council. No. 86 Blossom Street is located in what was originally a single one-story brick building at the corner of Blossom Street and Summer Street. This building as constructed contained nine stores, five on Summer Street and four on Blossom Street. These stores are now occupied chiefly for various retail businesses, including groceries, meats and poultry, a pharmacy and a bakery. The store at No. 86 Blossom Street has now been separated from the rest of the original building by interior masonry walls without openings. We construe a plan which is made part of the case stated as showing that this store is now completely walled off from the rest of the original building. It is a small store roughly about twenty-five feet square in a neighborhood of small stores. Over the door is a large sign containing the words "POULTRY MKT." Live fowl "in numbers" are delivered to this store. They are kept "for varying periods of time depending upon the market demand" and are killed by sticking each with a knife, after which they are plucked and cleaned. They are sold to retail meat markets and directly to customers who come to purchase a fresh killed fowl. No killing is done other than that of fowl. Some of the patrons and people engaged in the same business call the premises a slaughterhouse. The commissioner of public health of Lynn granted a permit "to conduct a slaughter house for keeping, selling and killing of live poultry at 86 Blossom Street." The places wherein live fowl are kept, sold and killed are located in districts "populated in the most part by members of a certain race whose religious tenets require

that live fowl be killed by a high official of that religion." No license or permit has ever been issued in Lynn for an abattoir or stock yard under the "zone ordinance," or for a slaughterhouse under G. L. (Ter. Ed.) c. 94, § 119.

There is no suggestion in the case stated, and no contention is made, that the business conducted at 86 Blossom Street is a nuisance or in any way offensive. We must therefore assume that it is wholly inoffensive.

The principal question is whether the facts stated, taken by themselves alone with no enlargement whatever by inference, demonstrate as matter of law that this use of No. 86 is not within the uses permitted in a business district. We think they fall short of such demonstration. The zone ordinance must be construed reasonably with regard both to the objects sought to be attained and to the general structure of the ordinance as a whole. If this activity is excluded from business districts it must fall into an industrial district. In its nature, so far as appears, it is as closely akin to business as it is to industry, as those terms are commonly used. So far as appears this is a "retail store" where "retail trade" is carried on and is therefore permitted in a business district. There is, to be sure, some selling to other stores, the amount of which in comparison with direct sales to individual customers does not appear. This may be only a small part of the total business. Even if it is a considerable part it does not necessarily deprive the business as a whole of the quality of a retail business. The words retail and wholesale are commonly defined, not with primary emphasis upon the difference between sales to an ultimate consumer and sales to one who intends to resell, but rather with reference to the difference between selling in small quantities and selling in large quantities or in bulk.

The doubt arises from the fact that the killing is a part of the business. But this is not decisive in favor of the petitioners. Preparation of articles for delivery is a common incident of many retail businesses. The ordinary fish market would hardly be taken out of the class of retail

stores because fish are cleaned or even killed there. Accessory uses are permitted by the ordinance under the conditions hereinbefore mentioned. It is a matter of common knowledge that fowl are often killed and dressed by poultry raisers and dealers in connection with retail sales. No such widespread practice exists with respect to the "neat cattle, sheep or swine" which alone are mentioned in G. L. (Ter. Ed.) c. 94, §§ 118–120A, 135, relating to the licensing of slaughterhouses. See also G. L. (Ter. Ed.) c. 111, § 151. Without defining the words abattoir or slaughterhouse, we think that the facts set forth in the case stated as to the killing at the store do not go quite far enough to remove the store as matter of law from the class of retail stores permitted in a business district or to turn it into an "abattoir" or "stock yard" as those words are used in the ordinance. See *Williams* v. *Schehl,* 84 W. Va. 499, 504, 505, 506.

The petitioners further contend that there is a violation of G. L. (Ter. Ed.) c. 94, § 9I (inserted by St. 1937, c. 362, § 3), which provides in part that "No animals or fowls shall be kept in or permitted to enter any building or part thereof" used for the production, preparation, packing, storing, display or sale of "bakery products." If we assume, without deciding, that the respondent superintendent and inspector is charged with some duty in respect to the enforcement of this statute also, still no violation of the statute is shown. It is useless to discuss the purely academic question whether that which was formerly a single building has now become two buildings by the erection of the masonry walls. No fowl enter any part of any building used in connection with bakery products. The part of a building so used is completely shut off from the poultry store by solid masonry walls. Under the statute if an entire building is used for the production, preparation, packing, storing, display or sale of bakery products, animals and fowl are excluded from the entire building. If a part of a building is so used they are excluded from that part. If, as the petitioners contend, the intent had been to exclude animals and fowl from an entire building if any part

of it, however remote and however separated, should be used as above stated, the words "or part thereof" would become meaningless.                    *Exceptions overruled.*