Rebecca K. DAY, et al.; Monroe County Plan Commission, Monroe County, Indiana; Phillip Rogers, Tim Tilton and Joyce Poling, in their capacity as Commissioners of Monroe County; and Jim Young, in his capacity as Sheriff of Monroe County, Plaintiffs–Appellants,

v.

John L. RYAN, Jack K. Ryan, and Theresa J. Ryan, d/b/a Ryan Brothers Livestock, Dorothy Ryan and Carol B. Holmes, Defendants–Appellees.

No. 47A01–8910–CV–391.

Court of Appeals of Indiana, First District.

Sept. 27, 1990.

Edward W. Najam, Jr., Lloyd T. Wilson, Jr., Najam & Wilson, David B. Schilling, Monroe County Atty., Bloomington, for plaintiffs-appellants.

David R. Day, Johnson, Smith, Densborn, Wright & Heath, Indianapolis, for defendants-appellees.

BAKER, Judge.

Defendant-appellees and cross-appellants John, Jack, and Theresa Ryan, d/b/a Ryan Brothers Livestock, and Dorothy Ryan (the Ryans) own a parcel of land in Monroe County outside Bloomington which they purchased from defendant-appellee and cross-appellant Carol Holmes. The plaintiff-appellants, who are some of the Ryans' neighbors, the Monroe County Plan Commission, the Commissioners of Monroe County, and the Monroe County Sheriff (collectively referred to as the County) brought this declaratory judgment action alleging the Ryans' use of their property as a stockyard was in violation of the Monroe County Zoning Ordinance (the Zoning Ordinance). The Ryans brought a counterclaim, alleging Monroe County Ordinance 89–1 (the Road Ordinance), which prohibits trucks with a wheel base of 40 feet or more from traveling on two county roads leading to the Ryans' property, is unlawful.

We affirm in part and reverse in part.

### ISSUES

The parties raise several issues for our review, which we restate as follows:

I. Whether the trial court erred in determining the Ryans had a valid nonconforming use on the date of the re-enactment of the Zoning Ordinance.

II. Whether the Ryans' current use of the property as a stockyard is a permitted agricultural use under the Zoning Ordinance.

III. Whether the trial court erred in ordering the removal of certain structures from the Ryans' property.

IV. Whether the Road Ordinance is a valid exercise of Monroe County's police power.

1. Monroe County initially passed the Zoning Ordinance in 1974, but that enactment was declared invalid in a decision affirmed by this

### FACTS

The property in question is located on North Showers Road, a short distance east of State Route 37 and north of that highway's exit to Bloomington's College Avenue. The property is subject to the Zoning Ordinance, which was re-enacted on August 29, 1986,[1] and falls within one of the Ordinance's agricultural zones.

In 1982, Carol Holmes sold the property by a land contract to the Ryans. At that time, the property was used as a farm, and the Ryans continued that use, raising livestock and growing soy beans, corn, and hay. Prior to the re-enactment of the Zoning Ordinance, the Ryans built a new barn.

John, Jack, and Theresa all held individual livestock dealer's licenses issued by the State Board of Animal Health (the State Board), and they bought and sold livestock in addition to their farming pursuits. The Ryans dealt in, and continue to deal in, cattle, swine, sheep, and goats.

In 1987 and 1988, after the re-enactment of the Zoning Ordinance, the Ryans made several improvements to the property. These included a feed room and a scale house with concrete floors, a 40′ × 70′ concrete slab, permanent pens with hay feeders on the concrete slab, a holding tank for waste run-off from the pens, an enclosed 2,800 square foot addition to their barn, more pens outside this enclosure, and a concrete path between the barn and the enclosure. As a result, the volume of their livestock business increased markedly, and in the spring of 1988, they began to receive complaints from their neighbors about the smell, noise, and vehicular traffic generated by their business.

On April 1, 1988, the Ryans' individual livestock dealers' licenses expired. On April 5, they applied for relicensure, but they allowed their livestock dealer's bond to expire on April 16, and did not tender renewal fees until May 19. Accordingly, the State Board denied the renewal application. On August 26, 1988, the State Board issued the Ryans a livestock dealer's li-

court in *Board of Zoning Appeals of Monroe Cty. v. Berndt* (1987), Ind.App., 502 N.E.2d 1349, *trans. denied.*

cense for a stockyard rather than for individual dealers. Two months later, on October 26, the Ryans and the State Board entered into a consent decree which stipulated, among other things, that the Ryans had begun operation of a stockyard without a license. In the interim, on September 30, 1988, the Ryans received a designation as a livestock market from the United States Department of Agriculture and a federal license for the interstate shipment of swine.

During the same period of time, in the late summer of 1988, the Ryans' neighbors began complaining to county officials about the Ryans' use of the property as a stockyard. Subsequently, county zoning authorities and the County Attorney informed the Ryans that their use was not in compliance with the Zoning Ordinance.

After the Ryans failed to file a petition to attempt compliance with the Zoning Ordinance, the County and neighbors filed their actions. The actions were consolidated, and the resulting amended complaint contained four counts: first, that the Ryans were violating the Zoning Ordinance by conducting a business enterprise in an agricultural zone; second, that the Ryans' use of their property was a nuisance;[2] third, that the Ryans violated the Monroe County Code by enlarging their driveway without a permit; fourth, that the Ryans had enlarged existing facilities without proper building permits.

Because the Ryans' business required transport of large numbers of animals, a large volume of traffic, including tractor trailers, traveled to and from their property. The tractor trailers had difficulty negotiating the intersection of the two county roads leading from the Ryans' property to State Route 37, and, at times, the trailers drove off the road, knocking down utility guide wires, damaging yards, and blocking the intersection. The problems with the tractor trailers led the County to pass the Road Ordinance on January 26, 1989. The Road Ordinance prohibits tractor trailers with a wheel base in excess of 40 feet from traveling over the two county roads between the Ryans' property and State Route 37.

The Ryans responded to the passage of the Road Ordinance by bringing a counterclaim against the County, alleging the Road Ordinance was unlawful. The County then sought an injunction to enforce the Road Ordinance.

On Count I, the trial court found the Ryans had a nonconforming use on the date the Zoning Ordinance was re-enacted, but that the 1987 and 1988 improvements to the property were impermissible expansions of the nonconforming use. Accordingly, the trial court rendered judgment allowing the Ryans to continue their livestock dealing operations without restriction as to volume, but also ordered them to remove the 1987 and 1988 improvements. On Count III, the trial court fined the Ryans for expanding the driveway without a permit. On Count IV, the court rendered judgment for the Ryans, finding that they had complied with all building permit requirements. On the Ryans' counterclaim, the trial court granted the County's request for an injunction, and enjoined the Ryans and anyone acting in concert with them from violating the Road Ordinance.

The nexus of the County's appeal is that the trial court erred in determining the Ryans had a valid pre-existing nonconforming use. On cross-appeal, the Ryans claim their use of the property is a permitted agricultural use, and that the Road Ordinance is an invalid exercise of the County's police power. Neither party has appealed the trial court's judgment on Count III or Count IV.

## DISCUSSION AND DECISION

### I Scope of Review

The trial court entered detailed findings of fact and conclusions of law. In such a situation, we pay great deference to the trial court's findings, and will set them aside and reverse only if they are clearly erroneous. *Ind. & Mich. Elec. Co. v. Terre*

---

**2.** The parties stipulated that the nuisance count would be tried after the counts alleging ordinance violations, and at the time of oral argument, the nuisance count was still pending.

*Haute Industries* (1987), Ind.App., 507 N.E.2d 588, *trans. denied.* This means that, even if the record contains evidence supporting the judgment, we will set aside the findings if the record leaves us "with the firm conviction that a mistake has been committed." *Id.* at 596–97. We turn now to the status of the Ryans' use on the date the Zoning Ordinance was re-enacted.

## II Prior Nonconforming Use

At the time the Zoning Ordinance was re-enacted in 1986, the Ryans were engaged in traditional farming activities as well as livestock dealing operations. The trial court found this use was nonconforming. The trial court did not, however, determine the Ryans were operating a stockyard, either in 1986 or at the time of trial; it merely found the Ryans were engaged in a "livestock dealing operation," which they had impermissibly expanded after 1986. We agree with the Ryans that their use in August of 1986 was a permitted agricultural use under the terms of the Zoning Ordinance.

In the agricultural zone, the Zoning Ordinance allows property to be used for "farm crops-livestock" without restriction. Monroe County, Ind., Zoning Ordinance § 803-7; *Record* at 694. In construing this and all the language in the Zoning Ordinance, we follow the ordinary rules of statutory construction. *Pleasureland Museum, Inc. v. Dailey* (1981), Ind.App., 422 N.E.2d 754. Among other things, this requires us to interpret the Zoning Ordinance as a whole and to give its words their plain, ordinary, and usual meaning. *Simon v. Auburn Bd. of Zon. App.* (1988), Ind.App., 519 N.E.2d 205, 211.

■ In its usual meaning, agriculture is a broader word than farming. *See Fleckles v. Hille* (1925), 83 Ind.App. 715, 149 N.E. 915. It is "the art or science of cultivating the soil, including the planting of seed, the harvesting of crops, and the raising, feeding and management of live stock or poultry." *Id.* 83 Ind.App. at 716, 149 N.E. at 915. *See also Downing et. al. v. Indiana State Bd. of Agriculture* (1891), 129 Ind. 443, 28 N.E. 123; *Indiana*

*Fire Prevention and Bldg. Safety Comm. v. Rose Acre Farms, Inc.* (1988), Ind.App., 530 N.E.2d 131 *trans. denied; Mentor Lagoons, Inc. v. Zoning Bd. of Appeals of Mentor* (1958), 168 Ohio St. 113, 151 N.E.2d 533; *See generally, Annot.,* 97 A.L.R.2d 702; 101A C.J.S. *Zoning & Planning* § 128 (1979). The size of an operation is not necessarily dispositive of the agricultural nature of its use. *See, e.g., Fleckles, supra; Hausman v. Rudkin* (1972), Fla.App., 268 So.2d 407 (cattle breeding operation with up to 600 head of cattle and a few horses was an agricultural use).

■ In the present case, the trial court found the Ryans grew crops and raised livestock, in addition to buying and selling livestock. The trial court then concluded these activities represented a nonconforming use. That the raising of the crops and the livestock were agricultural pursuits is beyond question. Indeed, these activities are the quintessence of farming, which is a more restrictive term than agriculture. The trading of livestock raised elsewhere, while more than an incidental portion of the Ryans' activities, did not work a transformation of the basic agricultural nature of the Ryans' use of the property. Just as the slaughter of animals in a retail setting does not destroy the retail nature of a use, *Petros v. Superintendent and Inspector of Bldgs. of Lynn* (1940), 306 Mass. 368, 28 N.E.2d 233; *Williams v. Schehl* (1919), 84 W.Va. 499, 100 S.E. 280, so the trading of livestock in an agricultural setting does not automatically destroy the agricultural nature of a use. It is a matter of common knowledge that farmers, or to use the broader term, agriculturists, trade livestock. To hold that such trading, in and of itself, changes an agricultural use to a commercial or industrial use would be untenable.

From the trial court's findings and the foregoing principles, it is clear the Ryans had a permitted agricultural use when the Zoning Ordinance was re-enacted, and that the trial court's conclusion the Ryans had a nonconforming use is contrary to the trial court's own findings of fact and must be reversed.

*III Current Use*[3]

The Ryans employ the trial court's term, "livestock dealing operations," to describe their current use; nonetheless, as the County correctly argues, they operate a stockyard. The consent decree between the Ryans and the State Board stipulates that the Ryans operate a stockyard. *Record* at 958. This consent decree was entered into after the Ryans asked a State Board employee the prerequisites to build a stockyard and after the State Board determined the Ryans had started a stockyard without a license. Under the State Board's regulations, a stockyard:

> means any place of business, establishment, or facility commonly known or advertised as a stockyard, and which is operated for compensation or profit as a public market, consisting of sheds, pens, or other enclosures, and their contiguous appurtenances in which live cattle, sheep, swine, horses, mules or goats are received, held or kept temporarily for sale, market or shipping.

345 I.A.C. 7-2-1(c).[4] The trial court, while refraining from using the term "stockyard," found the Ryans' current use contained all the elements of a stockyard, and we will proceed based on those findings.[5]

■ While the trading of livestock will not automatically destroy an agricultural use, the distinction between agricultural uses and commercial or industrial uses is fundamental. *Jones v. Johnson* (1949), 80 Ga.App. 340, 55 S.E.2d 904. Accordingly, if a stockyard is not a permitted agricultural use under the Zoning Ordinance, the Ryans may not operate a stockyard without a variance or an exception.

■ The Zoning Ordinance makes no provision for stockyards, though it provides for feed lots and livestock sale barns as special exceptions in agricultural zones. Monroe County, Ind., Zoning Ordinance § 803–7; *Record* at 694–95. The Ryans argue this failure to mention stockyards implies that a stockyard, since it contains livestock, is a permitted use under that portion of § 803–7 allowing "farm crops-livestock" in agricultural areas without restriction. We disagree. When a statute or ordinance specifies or enumerates certain items, items not specified are excluded by implication. *Maroon v. State of Indiana, Dept. of Mental Health* (1980), Ind.App., 411 N.E.2d 404. Additionally, the Zoning Ordinance itself provides that, *"[e]xcept as provided,* no building or premises shall be used for any purpose other than permitted in the zoning district in which the building or premises is located." Monroe County, Ind., Zoning Ordinance § 801–3 (emphasis added); *Record* at 686. Feed lots and sale barns are provided for; stockyards are not.[6] By its terms, the Zoning Ordinance excludes stockyards from agricultural zones.

Moreover, while it cannot be contended that a stockyard, which by definition houses farm animals, has no relation to agriculture, not all activities with an agricultural

---

**3.** As revealed by the trial court's findings of fact, the Ryans' use of the property at the time of trial was a substantial departure from their use on August 29, 1986. This use, however, has been stayed pending the outcome of this appeal.

**4.** Similarly, under the federal Packers and Stockyards Act of 1921, a stockyard "means any place, establishment, or facility commonly known as stockyards, conducted, operated, or managed for profit or nonprofit as a public market for livestock producers, feeders, market agencies, and buyers, consisting of pens, or other inclosures, and their appurtenances, in which live cattle, sheep, swine, horses, mules, or goats are received, held, or kept for sale or shipment in commerce." 7 U.S.C.S. § 202 (Law.Co-op. 1978).

**5.** Moreover, we are persuaded by the State Board's determination. The State Board is responsible for the licensing of stockyards, and we pay strong deference to the expertise of administrative agencies acting within their statutorily defined scope of authority. *See Indiana Dept. of Correction v. Doody* (1990), Ind.App., 556 N.E.2d 1357; *Citizens Action Coalition v. Northern Ind. Pub. Serv. Co.* (1990), Ind.App., 555 N.E.2d 162.

**6.** In the absence of controlling zoning provisions, feed lots have been held to be agricultural uses. *Fields v. Anderson Cattle Co.* (1964), 193 Kan. 558, 396 P.2d 276. The Ryans, however, have directed us to no authority, and we have found none, for the proposition that a stockyard is an agricultural use in the absence of controlling zoning provisions.

nexus are themselves agricultural. *In re Boyer* (1917), 65 Ind.App. 408, 117 N.E. 507; *Farmers Reservoir & Irrigation Co. v. McComb* (1949), 337 U.S. 755, 69 S.Ct. 1274, 93 L.Ed. 1672. In *Boyer*, the court held that an injured employee of a wheat threshing business was not an agricultural employee, but an industrial employee, eligible for workers' compensation benefits. The court found wheat threshing to be "a business or industrial pursuit in and of itself, entirely separate and independent of farming.... [even though wheat threshing has] to do with getting the farm product ready for consumption." *Boyer*, 65 Ind. App. at 411, 117 N.E. at 508. In *Farmers Reservoir*, the United States Supreme Court applied the same analysis, and stated:

> [F]unctions which are necessary to the total economic process of supplying an agricultural product become, in the process of economic development and specialization, separate and independent productive functions operated in conjunction with the agricultural function but no longer a part of it. Thus, the question as to whether a particular type of activity is agricultural is not determined by the necessity of the activity to agriculture nor by the physical similarity of the activity to that done by farmers in other situations. The question is whether the activity in the particular case is carried on as part of the agricultural function or is separately organized as an independent productive activity.

*Id.*, 337 U.S. at 761, 69 S.Ct. at 1278, 93 L.Ed. at 1680. Under both Indiana and federal statutes, a stockyard is a place where livestock is temporarily housed on its way to market; it is not a place where livestock is bred, raised, managed, or fed on a long-term basis. Even though a stockyard is involved in delivering a farm product to market, it is a separately organized

activity and is therefore not an agricultural pursuit.[7]

The trial court correctly found the Ryans' use of the property was not a permitted agricultural use under the Zoning Ordinance.

*IV Scope of Injunction*

It follows from our conclusion in section III that the Ryans cannot continue to use the property as a stockyard without approval from the Monroe County Plan Commission. Absent such approval, their impermissible use may be enjoined. *See Fidelity Trust Co. v. Downing* (1946), 224 Ind. 457, 68 N.E.2d 789; *Woods v. Brown Cty. Plan Com'n.* (1983), Ind.App., 446 N.E.2d 973, *trans. denied.* Accordingly, the trial court issued a mandatory injunction, ordering the Ryans to remove the 1987 and 1988 additions, including the feed room, the scale house, and the pens outside the 2,800 square foot addition to their barn. While injunctive relief was proper, this remedy was too severe.

An injunction is an extraordinary equitable remedy which should be granted only with caution. *F.W. Means & Co. v. Carstens* (1981), Ind.App., 428 N.E.2d 251, 260, *trans. denied.* An injunction should be narrowly tailored, so that its scope is never "more extensive than is reasonably necessary to protect the interests of the party in whose favor it is granted." *Id.* The interests of the County and the Ryans' neighbors do not extend to the existence of the Ryans' 1987 and 1988 improvements, but merely to the use of those improvements. The structures the trial court ordered removed, while they are the very structures that transformed the Ryans' use from agricultural to non-agricultural, are perfectly suited for agricultural use. For example, the pens and the other structures can be used for *raising* livestock just as easily as they can for *trading* livestock, and need not be removed.

7. Other cases, while not concerned with zoning questions, have specifically noted that a stockyard is not an agricultural use. *See, e.g., Commonwealth v. Peters Orchard Co.* (1986), 511 Pa. 465, 515 A.2d 550 (under Pennsylvania tax law, a stockyard is not an agricultural business); *Jacobs & Wright v. Brigham* (1920), Tex.Civ. App., 227 S.W. 249 (affirming trial court's grant of a nuisance injunction against a stockyard because the jury found the yard was not within, or reasonably close to, an industrial area).

█ This brings us to an important related issue. Paragraph 1 of the trial court's judgment reads as follows:

> With respect to Count I of the Amended Complaint, Ryan Brothers are hereby allowed to use the barn *and adjacent 40' × 70' area* for livestock dealing, and are ordered to remove the feed room, scale house, and additional pens outside the enclosed 2,800 square foot addition.

*Record* at 656 (emphasis added). The County argues the 40' × 70' area, which is a concrete slab, was built in 1987, after the effective date of the Zoning Ordinance. If the County is correct, the area is subject to the same injunction as the other 1987 and 1988 additions. The Ryans have declined to respond to this argument in any way. Their failure to respond is akin to a failure to file a brief, and entitles the County to reversal upon a prima facie showing of reversible error. *Downing v. Eubanks*, 1990, Ind.App., 557 N.E.2d 1027. Because the trial court entered special findings of fact and conclusions of law, a showing of prima facie error requires a showing that the trial court's findings are clearly erroneous.[8] *Ind. & Mich. Elec. Co., supra.*

In the present case, the trial court's findings were clearly erroneous. In its Finding of Fact No. 6, the trial court stated "prior to August 29, 1986, [the Ryans] installed a concrete slab adjacent to the barn." *Record* at 650. In its Finding of Fact No. 8, the trial court stated that the Ryan's "use included temporary pens on the area adjacent to the barn. In 1987, the Ryans improved said area by pouring a new concrete slab." *Record* at 650. The evidence reveals the Ryans installed a concrete slab adjacent to their barn on only one occasion. The trial court's findings that a slab was installed once before 1986 and once after 1986 were internally inconsistent and, therefore, clearly erroneous.

The record includes the published deposition of Mark Freeman, who swore he installed the slab in 1987 and 1988. *Free-* *man Deposition* at 85. An unpaginated appendix to Mr. Freeman's deposition contains invoices for over $1,600 worth of concrete supplies sold to the Ryans in October of 1987. The parties stipulated before the trial court that the invoices were valid and their dates were correct. *Record* at 2032. This stipulation binds the parties. *Viccaro v. City of Ft. Wayne* (1983), Ind.App., 449 N.E.2d 1161. Contrary to the effect of their stipulation, the Ryans testified they believed the slab was installed prior to August 29, 1986. *Record* at 1872–73, 1901–03. At best, it is inappropriate and misleading for the Ryans to testify to a fact and enter a binding stipulation agreeing to a contrary fact, and we will be bound by the evidentiary effect of the stipulation. *See Gaboury v. Ireland Road Grace Brethren, Inc.* (1983), Ind., 446 N.E.2d 1310 (on motion for summary judgment, no genuine issue of material fact created by party's affidavit contradicting prior sworn testimony). Coupled with the Ryans' inappropriate actions and the trial court's error, the binding nature of the stipulation leads us to the sole conclusion that the concrete slab was installed after the re-enactment of the Zoning Ordinance.

The concrete slab, like the other 1987 and 1988 additions to the property, is used for the Ryans' stockyard. As we have already stated, the use as a stockyard is impermissible, and the use of the concrete slab for stockyard purposes must be enjoined accordingly. As with the other additions, it is the use of the slab, not its existence, which is impermissible, and the slab need not be removed.

## V The Road Ordinance

Monroe County Ordinance 89–1 prohibits tractor trailers with a wheel base of over 40 feet from using the two county roads leading from State Highway 37 to the Ryans' property. The Ryans argue the Road Ordinance is an invalid exercise of

---

**8.** A prima facie showing of reversible error requires different showings in different contexts. *See, e.g., Communications Workers of America, Local 5701 v. Drake* (1985), Ind.App., 487 N.E.2d 821 (negative judgment); *Johnson Cty. Rural Elec. Corp. v. Burnell* (1985), 484 N.E.2d 989 (summary judgment); *The Herald Telephone v. Fatouros* (1982), Ind.App., 431 N.E.2d 171 (adverse judgment).

Monroe County's police power. We disagree.

 Governmental actions, including ordinances, taken under the grant of police power, must be in reasonable furtherance of the goals of the health, order, morals, or safety of society at large. *City of Muncie v. Pizza Hut of Muncie, Inc.* (1976), 171 Ind.App. 397, 357 N.E.2d 735. Like statutes, ordinances are presumptively valid, and the party challenging an ordinance bears the burden of proving invalidity. *City of Indianapolis v. Clint's Wrecker Service, Inc.* (1982), Ind.App., 440 N.E.2d 737. In construing the statute, all doubts are to be resolved against the challenger, and, if possible, the ordinance is to be construed as constitutionally valid. *Id.*

 In making their argument, the Ryans rely principally on this court's holding in *City of Muncie, supra.* In *City of Muncie,* we affirmed an injunction preventing the City of Muncie from blocking access to the plaintiffs' restaurants from one of the streets fronting the restaurant. The only justification the City could present for barricading the restaurants' driveways was a series of complaints from nearby residential property owners regarding excessive traffic. We held this justification was not substantially related to the proper goals of police power actions to withstand scrutiny.

In the present case, as in *City of Muncie,* there were complaints from the Ryans' neighbors. Unlike *City of Muncie,* however, there was also evidence of property damage and testimony from the County Highway Engineer that it was mathematically impossible for tractor trailers with wheelbases in excess of 40 feet to negotiate the intersection between the two county roads in question without driving off the road. *Record* at 1658. The trial court concluded the Road Ordinance was a valid exercise of Monroe County's police power because the Road Ordinance was based on "engineering and design limitations, including road width, turning radii, grade differentials, elevations and the cost of road maintenance, as well as legitimate concerns for the public safety." *Record* at 656. We agree. The evidence reveals an obvious relation between the safety and welfare of society at large and the Road Ordinance. Additionally, unlike the action in *City of Muncie,* which completely blocked access to the restaurants from one side, the Road Ordinance merely prohibits a certain class of vehicle from using the roads; all other vehicles are free to use the roads. As we said in *City of Muncie,* "[w]hen property abuts a public street there is a right to have access to that street." *Id,* 171 Ind. App. at 400, 357 N.E.2d at 737. The Ryans have not been denied access to either of the public streets in question. Finally, the Road Ordinance does not prevent the tractor trailers from reaching only the Ryans' property; it prevents them from using the roads altogether, regardless of destination, avoiding the discriminatory taint present in *City of Muncie.*

The Ryans have failed to meet their burden in challenging the Road Ordinance. The trial court properly held the Road Ordinance valid and properly enjoined the Ryans and all acting in concert with them from violating the Road Ordinance.

## CONCLUSION

In summary, the Ryans had a permitted agricultural use on August 29, 1986. Their 1987 and 1988 improvements to the property did not destroy the agricultural nature of the Ryans' use. The use of these improvements for stockyard purposes, however, moved the Ryans out of compliance with the Zoning Ordinance. Accordingly, the trial court's judgment on the use of the property is reversed. The trial court's judgment on the Ryans' counterclaim and the County's request for an injunction to enforce the Road Ordinance is affirmed.

The cause is remanded to the trial court with instructions to modify its judgment in accordance with this opinion and to enter an injunction preventing the Ryans from using the 1987 and 1988 additions to their property, including the concrete slab, for stockyard purposes.

ROBERTSON, J., and HOFFMAN, P.J., concur.