
FILED

Sep 23 2013, 5:33 am

CLERK
of the supreme court,
court of appeals and
tax court

# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**JOEL C. WIENEKE**
Wieneke Law Office, LLC
Plainfield, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ELIZABETH ROGERS**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| C. SUBAH PACKER, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 93A02-1301-EX-83 |
| | ) | |
| THE INDIANA DEPARTMENT OF WORKFORCE DEVELOPMENT, | ) | |
| | ) | |
| Appellee. | ) | |

APPEAL FROM THE INDIANA DEPARTMENT OF WORKFORCE DEVELOPMENT
The Honorable Aija Funderburk, Administrative Law Judge
Case No. 12-11288

**September 23, 2013**

**OPINION - FOR PUBLICATION**

**NAJAM, Judge**

# STATEMENT OF THE CASE

C. Subah Packer[1] appeals the decision of the liability administrative law judge ("LALJ"), following a hearing, determining that Packer owes unemployment insurance for 2008, 2009, 2010, and 2011, plus interest and penalties. Packer raises a single issue for review, namely, whether her employees at Boone Ridge Stables performed non-agricultural work and, therefore, whether she owes unemployment insurance tax contributions for the years audited.

We affirm.

# FACTS AND PROCEDURAL HISTORY

At all relevant times, Packer operated Boone Ridge Stables, a farm with the primary business of raising, feeding, caring for, training, and managing horses. Packer keeps her own horses on the farm but also boards horses for others and teaches riding lessons. Packer had employees who cared for the horses, conducted husbandry activities, and maintained the farm, its equipment, and the barn. Packer "did not keep separate records[] detailing time records and/or payments made to individuals for services provided to boarded horses, riding horses, and horses owned by Packer." Appellant's App. at 4.

In July 2011, Packer terminated one of her employees for absenteeism. In January 2012, that employee, who had worked for Packer for three years, applied for unemployment insurance benefits. Because Packer had not reported any wages for that

---

[1] The parties used the full names of individuals in their briefs, and there is no evidence in the record that any party to this appeal made an "affirmative request pursuant to Administrative Rule 9(G)(1.2)" to exclude from public access the identities and information confidential under Indiana Code Section 22-4-19-6 and the rule. Recker v. Review Board, 958 N.E.2d 1136, 1138 n.4 (Ind. 2011). Thus, we use the parties' names.

employee, the Department of Workforce Development initiated a "block claim investigation." Id. Based on that investigation, Shawn Shields from the Department's Employer Audits Section requested that the Department conduct an audit of Boone Ridge Stables. The remaining facts, as determined by the LALJ, are as follows:

> The Department sent a Compliance Audit Questionnaire to [Packer] to gather additional information. The questionnaire was completed and returned to the Department, stating that [Packer's] business activity was boarding, raising, and care of horses. On February 24, 2012, Andrew Cull, Auditor, examined [Packer's] records for 2008, 2009, 2010, and 2011 at [Packer's] accountant's office.

> In reviewing [Packer's] records, Mr. Cull discovered that [Packer] made payments to eleven individuals performing services in 2008, seven individuals in 2009, four individuals in 2010, and six individuals in 2011. See Department's Ex. 6. [Packer] paid more than $1500 to individuals performing services in at least one calendar quarter in each year of the audit period. See Department's Ex. 6.

> Mr. Cull found that [Packer] raised some horses as agricultural labor but that [she] also boarded other owners' horses[] and gave riding lessons, which was not considered agricultural labor. See Department's Ex. 7. Mr. Cull treated all payments to individuals, who provided services to [Packer], as regular/non-agricultural labor. See Department's Ex. 7.

> On March 7, 2012, Mr. Cull issued a Notice of Audit Findings, stating that [Packer] paid gross wages in the following amounts for the audit period: $22,569.40 for 2008; $18,246.64 for 2009; $15,304.92 for 2010; and $15,992.66 for 2011. Mr. Cull determined that [Packer] was an employer as defined by Indiana Code § 22-4-7-1. See Department's Ex. 7. . . .

Id. Based on the audit determination that Packer was an employer as defined by the Unemployment Compensation Act, the Department ordered her to pay unemployment insurance for the audit years, plus interest and penalties.

3

Packer protested the Notice of Audit Findings. On October 15, the LALJ held a hearing, where Packer appeared and gave testimony. On December 20, the LALJ affirmed the Department's determination. Packer now appeals.

**DISCUSSION AND DECISION**

Packer appeals the determination by the LALJ that she owes unemployment insurance taxes, plus interest and penalties, for the years 2008 through 2011. Indiana Code Section 22-4-32-9(a) provides that "[a]ny decision of the liability administrative law judge shall be conclusive and binding as to all questions of fact." When the LALJ's decision is challenged as contrary to law, we are limited to a two-part inquiry into the sufficiency of the facts found to sustain the decision and the sufficiency of the evidence to sustain the findings of fact. Bloomington Area Arts Council v. Dep't of Workforce Dev., Unemployment Ins. Appeals, 821 N.E.2d 843, 849 (Ind. Ct. App. 2005). Basic facts are reviewed for substantial evidence, conclusions of law for their correctness, and ultimate facts to determine whether the LALJ's finding is a reasonable one. Id. Ultimate facts are conclusions or inferences from the basic facts. Id.

Packer contends that she is not liable for unemployment compensation tax "as a matter of law" because the nature of her employees' labor was strictly agricultural. Appellant's Brief at 5. In essence, Packer challenges the determinations that some of the horses at the stable are not agricultural commodities, that any part of her employees' work is non-agricultural, and, therefore, that all of their wages are subject to taxation under the Act. We consider each point in turn.

4

The purpose of Indiana's Unemployment Compensation Act, Indiana Code article 22-4 ("the Act"), is to "provide for payment of benefits to persons unemployed through no fault of their own." Ind. Code § 22-4-1-1 (2007); Indiana State Univ. v. LaFief, 888 N.E.2d 184, 186 (Ind. 2008). Unemployment compensation in Indiana is financed by a tax on Indiana employers. But not all types of employment are eligible for unemployment compensation benefits. In Indiana Code chapter 22-4-8, our legislature defined the types of employment that are covered for unemployment insurance benefits and, by the same token, which employers must pay unemployment insurance taxes. The same statutes "affect[] a claimant's eligibility as well as a putative employer's liability." NOW Courier, Inc. v. Review Bd. of the Ind. Dep't of Workforce Dev., 871 N.E.2d 384, 389 (Ind. Ct. App. 2007). Thus, those who satisfy the definition of "employers" under the Act must make contributions, or money payments, to the unemployment insurance benefit fund if their engagement of workers satisfies the definition of "employment" under the Act. See Ind. Code § 22-4-2-4.

Indiana Code Section 22-4-8-2(l) defines employment as follows:

(1) Service performed after December 31, 1977, by an individual in agricultural labor (as defined in section 3(c) [Indiana Code Section 22-4-8-3(c)] of this chapter) when the service is performed for an employing unit which:

> (A) during any calendar quarter in either the current or preceding calendar year paid cash remuneration of twenty thousand dollars ($20,000) or more to individuals employed in agricultural labor; or

> (B) for some portion of a day in each of twenty (20) different calendar weeks, whether or not the weeks were consecutive, in either the current or the preceding calendar year, employed

5

in agricultural labor ten (10) or more individuals, regardless of whether they were employed at the same time.

But "employment" shall not include the following:

"Agricultural labor" as provided in section 2(l)(1) [IC 22-4-8-2(l)(1)] of this chapter shall include only services performed:

(A) on a farm, in the employ of any person, in connection with cultivating the soil or in connection with <u>raising or harvesting any agricultural or horticultural commodity</u>, including the raising, shearing, feeding, caring for, training, and management of livestock, bees, poultry, and furbearing animals and wildlife;

(B) in the employ of the owner or tenant or other operator of a farm, in connection with the operation, management, conservation, improvement, or maintenance of such farm and its tools and equipment, or in salvaging timber or clearing land of brush and other debris left by a hurricane, if the major part of such service is performed on a farm . . . .

Ind. Code § 22-4-8-3(3) (emphasis added).  And "employer" is defined in relevant part as

follows:

"[E]mployer" means any employing unit which for some portion of a day, but not necessarily simultaneously, in each of twenty (20) different weeks, whether or not such weeks are or were consecutive within either the current or the preceding year, has or had in employment, and/or has incurred liability for wages payable to, one (1) or more individuals (irrespective of whether the same individual or individuals are or were employed in each such day) or any employing unit which in any calendar quarter in either the current or preceding calendar year paid for service in employment wages of one thousand five hundred dollars ($1,500) or more, except as provided in [Indiana Code Section] 22-4-7-2(h), (e), and (i).

Ind. Code § 22-4-7-1.

Here, the LALJ found, and Packer does not deny, that she paid in total the following amounts to workers on her farm during the audited years: $22,569.40 for 2008; $18,246.64 for 2009; $15,304.92 for 2010; and $15,992.66 for 2011. Thus, Packer does not challenge the determination that she meets the definition of an "employer" under Section 22-4-7-1. But Packer contends that each of her employees worked in "agricultural labor," as defined by Section 22-4-8-3(3), because they cared for agricultural commodities (i.e., her horses) and, therefore, are not covered, and she is exempt from tax liability for unemployment insurance benefits. Further, she points out that she, and none of her employees, gave riding lessons.

We have not previously construed the definition of "agricultural commodities" in the unemployment compensation context. But we have previously considered the definition of "agricultural labor." In Day v. Ryan, 560 N.E.2d 77, 81 (Ind. Ct. App. 1990), this court discussed the meaning of "agriculture" in a general sense: "In its usual meaning, agriculture is a broader word than farming. It is the art or science of cultivating the soil, including the planting of seed, the harvesting of crops, and the raising, feeding and management of live stock or poultry." (Citations and internal quotation marks omitted). But in Day we recognized that "not all activities with an agricultural nexus are themselves agricultural," and we held that, "[e]ven though a stockyard is involved in delivering a farm product to market, it is a separately organized activity and is therefore not an agricultural pursuit." Id. at 82-83. In reaching that conclusion, we followed In re Boyer, 65 Ind. App. 408, 117 N.E. 507 (1917), where

> an injured employee of a wheat[-]threshing business was not an agricultural employee, but an industrial employee, eligible for workers' compensation

7

benefits. The [Boyer] court found wheat threshing to be "a business or industrial pursuit in and of itself, entirely separate and independent of farming [even though wheat threshing has] to do with getting the farm product reading for consumption."

We also noted in Day that the United States Supreme Court has recognized the fundamental distinction between an agricultural pursuit or function and a separately organized, independent productive activity. In Farmers Reservoir v. & Irrigation Co. v. McComb, 337 U.S. 755 (1949), the Court stated:

Functions which are necessary to the total economic process of supplying an agricultural product become, in the process of economic development and specialization, separate and independent productive functions operated in conjunction with the agricultural function but no longer a part of it. Thus, the question as to whether a particular type of activity is agricultural is not determined by the necessity of the activity to agriculture nor by the physical similarity to that done by farmers in other situations. The question is whether the activity in the particular case is carried on as part of the agricultural function or is separately organized as an independent productive activity.

Id. at 82-83.

Here, at all relevant times, Packer operated a stable where she raised, managed, and conducted husbandry services for horses. Her employees fed and cared for the horses, turned them out to pasture, helped maintain the farm buildings and equipment, and performed husbandry services. In general, such activity is agricultural labor. But the employees also cared for boarded horses and horses used for riding lessons in addition to tending Packer's horses. The boarding of horses is not agricultural but, instead, is a separately organized, independent productive activity. See id. Likewise, teaching riding lessons constitutes instruction in a sport and, therefore, is not an agricultural pursuit. The

8

Department conceded that some of the labor performed by Packer's employees was agricultural. Thus, except for the horses used for riding lessons, the Department did not

> contend that the horses being raised by Ms. Packer for use on the farm are not agriculturally used horses. So if it were not for the riding lessons and the boarding of other people's horses, we [the Department] would not have made a determination that [the unemployment insurance claimant] had covered wages.

Transcript at 16. But, when the employees cared for horses that were boarded or were used for riding lessons, they were not engaged in agricultural labor. See id. at 83; In re Boyer, 65 Ind. App. 408, 117 N.E. 507, 511-12 (1917).

> The LALJ

> conclude[d] that the employing unit employed agricultural labor by paying individuals to raise and care for fur-bearing animals (i.e., horses) that were owned by the employing unit as agricultural commodities. The Liability Administrative Law Judge, however, also conclude[d] that the employing unit also employed non-agricultural labor by paying individuals to raise and care for horses that were used for riding lessons and horses that were owned by others because those horses were not agricultural commodities.

Appellant's App. at 5. And, again, employers are not subject to employment compensation taxation for agricultural labor. Ind. Code § 22-4-8-3(3)(A).

It is an employer's responsibility to maintain adequate employment records. But Packer "did not maintain records to establish the amount of wages paid to individuals for services performed in non-agricultural labor." Appellant's App. at 5. Thus, the LALJ could not make an evidence-based determination of which employees and how many hours were attributable to agricultural and non-agricultural labor, and the Department could not calculate the amount of unemployment compensation taxes owed solely for non-agricultural labor. Under that circumstance, the LALJ determined that Packer owed

9

unemployment compensation taxes on the entire amount paid to her employees for the years in question. To conclude otherwise would have allowed Packer to escape liability for taxes owed for non-agricultural labor. We cannot say that the LALJ's factual determination is arbitrary, unreasonable, against the evidence, or contrary to law. As such, we affirm the LALJ's determination that Packer is liable for unemployment insurance taxes for the audited years.

Affirmed.

MATHIAS, J., and BROWN, J., concur.