THE COUNTY OF GRUNDY, Plaintiff-Appellee, *v.* SOIL ENRICHMENT MATERIALS CORPORATION, Defendant-Appellant.

(No. 71-147;

Third District—February 15, 1973.

Richard T. Buck, of Joliet, for appellant.

John J. Hanson, Assistant State's Attorney, of Morris, for appellee.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

Defendant Soil Enrichment Materials Corporation appeals to this court from an injunction order entered in the circuit court of Grundy County enjoining the use of digested sludge as a liquid organic fertilizer on farm land situated in Grundy County. Grundy County had contended that a zoning certificate and occupancy certificate were required before the sludge could be used on farm lands in the county. Soil Enrichment Materials Corporation, hereinafter called SEMCO contended that the use of the digested sludge on agricultural lands as a fertilizer was an "agricultural purpose" and was, therefore, exempt from the Grundy County Zoning Ordinance.

The issue in the case, therefore, is whether the spreading of digested sludge as fertilizer on farm lands in Grundy County was subject to control by the Grundy County zoning and building officer and the Grundy County Zoning Ordinance or whether the use thereof is exempt as an "agricultural purpose" under the 1971 Illinois Revised Statutes, ch. 34, sec. 3151.

Section 3151 of the zoning provisions relating to counties in chapter 34 of the Illinois Revised Statutes referred to, provides specifically in section 1:

> "The powers by this Act given shall not be exercised so as to deprive the owner of any existing property of its use or maintenance for the purpose to which it is then lawfully devoted; *nor shall they be exercised so as to impose regulations or require permits with respect to land used or to be used for agricultural purposes,* or with respect to the erection, maintenance, repair, alteration, remodeling or extension of buildings or structures used or to be used for agricultural purposes upon such land except that such buildings or structures for agricultural purposes may be required to conform to building or set back lines;   *   *   *." (Emphasis added.)

It appears from the record that defendant SEMCO has a contract for $2.5 million to remove digested sludge from the Calumet Sewage Treatment Plant of the Metropolitan Sanitary District of Greater Chicago. SEMCO has contracted with a number of landowners with property in Grundy County to spread sludge as a fertilizer on the farm land. It is conceded by the parties that the property upon which the sludge is to be spread is properly devoted to agricultural use. The sludge is placed in railroad cars and hauled by rail to a site in Grundy County. It is placed

there in a lagoon or pit and pumped from that lagoon onto adjoining farm lands, where it is sprayed upon the soil.

In January 1971 SEMCO applied for a building permit so as to allow SEMCO to erect a pumping house to contain the pumping equipment and necessary controls. Grundy County building and zoning officer refused to grant the permit for construction of the pumphouse and controls and, as a result, SEMCO did not build a pumphouse, for its employees and pumping equipment, but filed a *mandamus* suit to compel the issuance of a building permit. On May 17, 1971, during the pendency of the *mandamus* action, SEMCO commenced the spreading of liquid organic fertilizer on the farm lands zoned "Agricultural" without constructing any building. No construction of a building by SEMCO has in fact taken place in Grundy County.

On June 16, 1971, Grundy County filed an action praying for an injunction to prevent SEMCO from distributing and spreading the liquid organic fertilizer on land admittedly zoned "Agricultural." It was contended by Grundy County that the spreading of liquid organic fertilizer required the issuance of a zoning and occupancy permit or a conditional use permit. At a preliminary hearing on June 21, 1971, the trial court refused to grant the injunction and continued the matter until after the Zoning Board of Appeals of Grundy County rendered its decision on the appeal which SEMCO had taken to such Board of Appeals. The Board of Appeals met and affirmed the decision of the zoning officer that a zoning permit or certificate was required. SEMCO on June 25, 1971, filed a counter-complaint for an injunction as against Grundy County and contended that the spreading of digested sludge on the farm lands was an agricultural purpose, and that pursuant to Illinois Revised Statutes, ch. 34, sec. 3151 and the Grundy County Zoning Ordinance relating to agriculturally zoned districts, the spreading of liquid organic fertilizer on said agricultural lands could not be regulated by the Grundy County building and zoning officer.

A hearing was thereafter had before the circuit court of Grundy County on July 1, 1971. The trial judge who presided at the hearing properly stated the issue before the court as being simply, "Is the SEMCO operation of applying digested sludge on Grundy farm lands an agricultural purpose? If it is, then no zoning permit is necessary for the use of the land. The only requirement for the erection of its building is to obey all building and setback lines. If it is not an agricultural purpose, then it must seek a zoning permit and the county's prayer for injunction should be granted."

At the hearing in this cause, no evidence was presented by Grundy County to refute testimony presented by SEMCO that digested sludge

was and is a beneficial fertilizer and soil conditioner and that it provided soil nutrients that saved the farmers who were supplied with it without charge approximately $30 an acre on the cost of the fertilizer. While the county did not deny that digested sludge may be used as a fertilizer it contends that the primary purpose of SEMCO's operation is its disposal of sludge, which it contends is not an agricultural use. It is asserted that since SEMCO's principal business is the disposing of sludge, the spreading of the sludge as a fertilizer cannot come within the statute prohibiting regulation of agricultural uses by the county.

It is clear from the testimony of the building and zoning officer that he does not require a permit from a farmer or from a commercial establishment for the application of fertilizer to farm lands. He also does not require a permit when either the farmer or commercial establishment spreads insecticides or herbicides. The officer, however, took the position that digested sludge as a fertilizer is in an experimental stage, and, therefore, that the county has the right to regulate it and establish controls and conditions before it can be used. It was also established that digested sludge, unlike other commercial fertilizers, is being applied under a permit from the Environmental Protection Agency which defined SEMCO's operation as the large-scale disposal of sludge waste on major land areas. It was also therein described as "an experimental procedure." Conditions were imposed by the Environmental Protection Agency upon the use and application, which were designed to prevent possible pollution of streams and drinking supplies.

Experts testified for SEMCO that the use of digested sludge on the farm land was clearly an agricultural purpose in that the sludge provided a necessary fertilizer and soil conditioner for the land. The experts included the executive director of the Springfield Sanitary District in Springfield, Illinois, who testified that the application of digested sludge increased the fertility of the soil and increased crop yield on this soil. He also testified that in Sangamon County, SEMCO was not required to obtain a permit for the application of liquid sludge to the soil for the reason that it is an agricultural use and a permit is not required. An assistant professor of soil organic chemistry at the University of Illinois likewise agreed with the agricultural utilization of digested sludge. He also pointed out that sludge had been applied in Europe continuously from the year 1550 and that the crops are doing very well. A research soil scientist also testified that the nutrients in digested sludge make it a fertilizer and it has a great deal of value in soil conditioning aspects in supplying necessary organic matter and in producing water holding capacity and permeability of the soil, and, likewise, that its application as a fertilizer is an agricultural purpose. It was pointed out by witnesses,

also, that digested sludge is a well-recognized fertilizer and has been sold for years under the name of "Milorganite" which comes from Milwaukee Organic Fertilizer. This fertilizer is used widely by farmers. Milorganite is similar to the wet sludge involved in this case except that it is in a dry state and sold in bags. It was also pointed out that a company known as "Farm Supply" sells commercial fertilizer which it sprays from storage tanks on to the farmer's land and that neither the Farm Supply Company nor the sellers of Milorganite, nor others who spread fertilizer on the land, are required to have a zoning certificate or permit.

No controls are established in the Grundy County Zoning Ordinance for the spreading of fertilizer and there are no performance standards in the zoning ordinance for fertilizers or for herbicides. There is no testimony in the record that digested sludge was not a fertilizer or that applying digested sludge on farm lands was not a properly recognized agricultural purpose. There was testimony that the sludge operation had an odor and was, therefore, objectionable. The draftsman of the Grundy County Zoning Ordinance also had specifically given a written opinion to the Grundy County zoning and building officer that the application of digested sludge or liquid organic fertilizer on the lands zoned "Agricultural" could not be regulated under the zoning ordinance.

In the exhibits it was indicated that the application of the digested sludge was in the experimental stage and that drainage from the disposal area should be investigated so that nitrate pollution of ground water supplies would be avoided and, likewise, as a safety measure the sludge is not used on crops that would be eaten raw by humans. It was pointed out, however, that the proper use of the sludge recommended that it be lagooned and not be applied as freshly digested sludge so as to reduce the nitrogen in the sludge.

There was likewise evidence from one of the farm owners who was having the digested sludge applied to his farm land. He testified to the highly desirable results of the application of such fertilizer. As we have stated, the arrangement which SEMCO made with the farmers was that the digested sludge would be given to the farmers and not sold to them.

On the basis of the record, the trial court concluded that digested sludge in its present experimental stage "cannot be accepted as a product whose application to the soil can properly be determined agricultural." The court also stated that SEMCO's operation in Grundy County was not, nor was it ever intended to be, for an agricultural purpose, since it was basically a disposal operation to rid the sewage disposal plant of the storage problem which it has in the processing of raw sewage. The court emphasized that unlike other commercial fertilizers, sludge is

given, not sold, to the farmer and if there is delay in its application, SEMCO pays the farmer for the crops which could not be raised. The fact that large amounts of sludge are applied to the land and that unlike other commercial fertilizers, it is being deposited under a permit from the Environmental Protection Agency, the court felt, reinforced the court's conclusion that it was not being used for an agricultural purpose. On this basis, the trial court stated that SEMCO failed to prove that its operation was for an agricultural purpose. The trial court thereupon concluded that since the issue was a debatable one, the court would not interfere with the judgment of the legislative body of the county in authorizing the zoning officer to require a zoning certificate before SEMCO could spread the sludge on the farm lands.

■■ The issue before this court, therefore, is whether the record offers a basis upon which the trial court's order could be sustained. It is apparent that if we were involved in what was simply a dumping or storage of digested sludge, and not a spreading of the sludge in a reasonable manner as a fertilizer, there would be a question as to the use for agricultural purposes. Under the facts in this case, however, we have an entirely different problem since there is a preliminary lagooning of the digested sludge and it is thereafter lagooned prior to application and is applied subject to certain controls of the Environmental Protection Agency. Clearly, under the evidence as presented in the record, the spreading of the digested sludge as a fertilizer thereby obviously becomes a use for agricultural purposes.

■■ As we have noted under the law of this State, a county, through its zoning ordinance, may not impose regulations with respect to land used for agricultural purposes other than requiring the structures or buildings on the land to conform to building or setback lines. Even the Grundy County Zoning Ordinance itself similarly recognized the express statutory prohibition against the county attempting to regulate or require permits with respect to land used or to be used for agricultural purposes, other than through regulation of buildings or structures insofar as keeping them in conformity with applicable setbacks was concerned. Grundy County Zoning Ordinance, Agricultural Districts, sec. 7, par. (b).

■ It is apparent likewise that fertilizing of agricultural lands is a necessary part of a use for agricultural purposes and as such would be exempt from the county zoning ordinance regulation. The words, "agricultural purpose" have been generically defined by the Supreme Court of the State of Illinois. In *People ex rel. Pletcher v. City of Joliet*, 321 Ill. 385, 152 N.E. 159, the Illinois Supreme Court determined the question of the validity of annexation proceedings as they applied to a two and a half acre tract contiguous to Joliet's border upon which the owner grew

grapes and some hay. The enabling act for annexation then exempted lands "used exclusively for agricultural purposes" where the owner refuses consent unless such "agricultural lands are bounded on at least three sides by subdivided lands also embraced in such territory to be annexed." After the Supreme Court first rejected the contention that Pletcher's land was bounded on three sides, it next considered what the legislature meant by the phrase "for agricultural purpose." The court then quoted a definition beginning with the essential concept that agricultural purpose involved "the art or science of cultivating the ground * * *." The court further stated that unless restricted by the context, the words "agricultural purpose" have generally been given this comprehensive meaning by the courts of the country. The definition was again affirmed in *Forsythe v. Village of Cooksville*, 356 Ill. 289, 190 N.E. 421.

From the record in this case, therefore, we must conclude that digested sludge applied to farm lands is admittedly a liquid organic fertilizer and soil conditioner, and is, consequently, being used for an agricultural purpose, and accordingly would be exempt from the Grundy County Zoning Ordinance and regulations. The land upon which the sludge was being applied in Grundy County was zoned "Agricultural", and, was all used for farming purposes, *i.e.*, raising of crops for the consumption or use of man. The experts in the field of agriculture testified as to the beneficial aspects of sludge as a liquid organic fertilizer and this testimony was supported by one of the farm owners upon whose land the sludge had been applied as a fertilizer. The use of digested sludge under the trade name of Milorganite was also referred to and there was evidence that it was being purchased in a dry form in bags and applied upon lands in Grundy County.

■■ On the basis of the record, we do not believe that the circumstance that the digested sludge might be considered to be in an experimental stage as a fertilizer would prevent its use being classified as an agricultural use. Even if the digested sludge was experimental as a liquid organic fertilizer, there is nothing in the Illinois statute which would justify denying the exemption from county zoning controls or which would prohibit an experimental use of fertilizer for an agricultural purpose. We find no authority which would authorize a county zoning and building officer to dictate whether a farmer can experiment with different fertilizers. The use of sludge as a fertilizer necessarily requires controls in usage as would any other fertilizer or herbicide or insecticide. The fact that the Environmental Protection Agency is regulating this use does not make it any less an agricultural use. Many of the necessary compounds used by a farmer in raising crops are experimental and potentially injurious to the soil and its surroundings. Such usage, we con-

clude, necessarily continues to be for an agricultural purpose and, under the applicable Illinois Act referred to, it is not under the control of the county zoning ordinance.

■■ It is also argued by appellant that the circumstance that SEMCO's business is principally disposing of sludge from the Metropolitan Sanitary District makes its spreading of the sludge as a fertilizer not a use for an "agricultural purpose." The fact that an organization may have many major objectives which have no agricultural connection would not operate to characterize the sale or gift of a fertilizer if, in fact, the fertilizer as applied has an agricultural purpose. The issue is not what appellant's main business interest is but solely whether or not the application and use of digested sludge on farm lands is serving an agricultural purpose. As we have indicated, if the sludge was simply dumped and stored on land in Grundy County without being used as a fertilizer in a reasonable manner, then the issue before us would be entirely different. On the basis of the record, however, it is reasonably clear that the County did not question the beneficial aspects of digested sludge as a liquid organic fertilizer and this was clearly demonstrated by the testimony presented on behalf of SEMCO.

An interesting case is cited by appellant which relates to the issue before us. In *Gaspari v. Board of Adjustment of the Township of Muhlenberg* (1958), 392 Pa. 7, 139 A.2d 544, the court had before it a situation where it was charged that the actual production of synthetic fertilizer on the land which then would be used, on the same land, for growing mushrooms, was not an agricultural use but rather manufacturing, and, therefore, not a use permitted in the zoning district of the plaintiff. The court there specifically took note of the testimony of an expert witness that preparing material in which you expect to grow a crop is just as much an agricultural purpose as the actual tilling of the farmer's field. In such case, therefore, even the production of a synthetic fertilizer was held to be agricultural use or purpose. This case illustrates the extent to which courts have gone in determining what constitutes an agricultural use.

From our examination of the record, therefore, we do not believe that the conclusion of the trial court is justified by the evidence presented. It was clearly shown that SEMCO's use of the land, insofar as it involved applying the digested sludge to agricultural land as a fertilizer, was a proper use for an agricultural purpose. It is apparent, as the trial court itself had posed the issue, that if the operation of applying digested sludge is an agricultural purpose no zoning permit is necessary for the use of the land in such manner.

The order of the circuit court of Grundy County enjoining defendant

Soil Enrichment Materials Corporation from applying digested sludge to agricultural lands as a fertilizer, is, therefore, reversed, and this cause is remanded to the circuit court of Grundy County with directions to vacate such injunction.

Reversed and remanded.

STOUDER ano SCOTT, JJ., concur.