George COOPER and Christina Cooper, d/b/a Cooper Septic Tank Service, Appellants–Defendants,

v.

Thomas CALANDRO and Sonja Calandro, Asa Sessions and Zora Sessions, Marvin Harsh and Ann Harsh, Wilber England and Bonnie England and Esther Helt, Appellees–Plaintiffs.

No. 40A01–9012–CV–492.

Court of Appeals of Indiana, First District.

Nov. 18, 1991.

Rehearing Denied Jan. 28, 1992.

David W. Stone, IV, Anderson, for appellants-defendants.

Timothy J. Vrana, Jeffrey S. Washburn, Sharpnack, Bigley, David & Rumple, Columbus, for appellees-plaintiffs.

BAKER, Judge.

George and Christina Cooper (the Coopers) appeal the grant of a permanent injunction prohibiting them from applying septic waste to their land until approved by the local plan commission and/or board of zoning appeals. We reverse.

## FACTS

George Cooper, d/b/a Cooper Septic Tank Service, has been in the business of septic waste disposal for some 35 years. He pumps out septic tanks, cleans sewer lines, and rents portable toilets. Cooper disposes of the sewage he collects either by

hauling it to the nearest sewage treatment plant, where he is charged a disposal fee, or by spreading it on a tract of land in Bartholemew County.

In 1987, with an eye toward retirement, George and Christina Cooper bought a 26–acre tract of land in Jennings County. The property is zoned for agricultural use. The Coopers are in the process of building a home on the property and have already erected a barn. They wish to raise a few horses and cows, and to that end they plan to grow hay on one portion of the property and use another portion for pasture. They have no previous experience in this kind of endeavor, however, and their soil, unfortunately, is of poor quality.

To improve the quality of the soil, Cooper plans to fertilize ten acres with some of the waste collected through his business. He sought and obtained the necessary permit to apply untreated septic waste to a ten acre tract of his real estate from the Indiana Department of Environmental Management.[1]

When the Coopers' neighbors got wind of the Coopers' intentions, they filed for injunctive relief,[2] alleging the Coopers' plan was commercial and therefore impermissible on land zoned for agricultural use only. On July 17, 1990, trial was held. Two witnesses were called: Cooper and Thomas Calandro, one of the complaining neighbors. Cooper testified that he intended to spread septic waste from his business onto the ten acre plot in order to fertilize the soil, and that he would do this up to twelve times a year; Calandro testified that Cooper's intention was to save his business time, effort, and money. On August 24, 1990, the trial court issued its findings of fact and conclusions of law, the most important of which we reproduce here:

### Findings of Fact

\* \* \* \* \* \*

18. The Defendants purchased [their 26 acre tract] both for residential and commercial purposes.

19. The Defendants intend to dispose of septic waste by land application on [their 26 acre tract] as part of their business if such land application is economically feasible. Such use is commercial in nature.

### Conclusions of Law

\* \* \* \* \* \*

2. The Defendants intend to use their real estate for both a commercial and agricultural purpose.

\* \* \* \* \* \*

7. The Plaintiffs met their burden of proof in demonstating [sic] that the Defendants have a commercial as well as agricultural intent for the use of their real estate.

8. The intended use of the real estate by the Defendants is in violation of the Jennings County Unified Zoning Regulations more specifically as follows: Land application of septic waste to the Defendant's real estate serves both a commercial and agricultural purpose. Commercial purposes are prohibited in Agricultural Zone areas.

*Record* at 137–38. Cooper was permanently enjoined from applying septic waste to his land until such time as the plan commission and/or board of zoning appeals allowed the activity. *Record* at 137. The Coopers appeal. The question for our review is whether the trial court erred in granting the permanent injunction.

### *Discussion and Decision*

 When, as is the case here, a party has requested and the trial court has entered specific findings of fact and conclusions of law, we cannot review the evidence to affirm on any valid legal basis. Instead, we must determine whether the trial

---

1. Cooper submitted three applications: one requested permission to apply 18,000 gallons of septic waste to a ten acre tract per year, one requested 27,000 gallons, and one requested 75,-000 gallons. The record does not indicate how many gallons per year Cooper's permit allows.

2. A second cause of action, one sounding in nuisance, was filed and subsequently abandoned at trial; consequently, the issue of nuisance is not before us.

court's findings are sufficient to support the judgment. *Vanderburgh County v. Rittenhouse* (1991), Ind.App., 575 N.E.2d 663, 665. In reviewing the judgment, we first determine whether the evidence supports the findings and then whether the findings support the judgment. *Id.* We reverse judgments when they are clearly erroneous, i.e. unsupported by the findings of fact and conclusions of law entered on those findings. *Id.* A judgment supported by findings of fact and conclusions of law may still be reversed if the findings of fact themselves are clearly erroneous based on the evidence admitted. *Id.* Findings of fact are "clearly erroneous" when a review of the record leaves us firmly convinced a mistake has been committed. *Day v. Ryan* (1990), 560 N.E.2d 77, 81. We will not reweigh the evidence or reassess the credibility of the witnesses, however. *Vanderburgh, supra.* The grant or denial of an injunction lies within the trial court's sound discretion. The decision will not be overturned unless it was arbitrary or amounted to an abuse of discretion. *Residential Management Systems, Inc. v. Jefferson County Plan Commission* (1989), Ind. App., 542 N.E.2d 227, 229. But because an injunction is an extraordinary equitable remedy, it should be granted only with caution. *Day, supra,* at 83.

■ Our analysis begins with an examination of the Jennings County Unified Zoning Regulations. The regulations provide for eight zoning districts, including an agricultural and a commercial district. "Agriculture" is defined as:

The use of ten acres or more of land for agricultural purposes, including farming, dairying, pasturage, apiculture, horticulture, floriculture, viticulture, and animal and poultry husbandry, and the necessary accessory uses for packing, treating, or storing the produce; provided, however, that the operation of any such accessory uses shall be secondary to that of the normal agricultural activities.

*Record* at 164 (Jennings County Unified Zoning Regulations at 2). "Commercial," however, is not defined.

The regulations state that "[n]o land or building shall be devoted to any use other than a use permitted herein in the zoning district in which such land or buildings shall be located...." *Record* at 164 (Zoning Regulations at 39). "Use" is defined as "[t]he purpose or activity for which the land or building thereon is designed, arranged, or intended, or for which it is occupied or maintained." *Record* at 164 (Zoning Regulations at 15).

The trial court found that the Coopers' proposed spreading of septic waste from their business onto their tract of land was a commercial use, although it served both commercial and agricultural purposes.

The neighbors argue the trial court was not clearly erroneous in determining that the Coopers' intended fertilization was "commercial." In support, they claim that the disposal of waste is an essential element of the Coopers' business, and that the business will save money to the extent it no longer has to pay disposal fees at the local sewage treatment plant. They note the Coopers have no prior agricultural experience, and argue the Coopers' proposed spreading of untreated septic waste is indiscriminate, i.e. the Coopers have not adequately assessed the nutritional needs of the soil and crops, nor tested the sewage to determine its ability to deliver any nutritional needs. Finally, they argue the restrictions [3] imposed by the Department of Environmental Management preclude the

---

**3.** Pursuant to 327 Ind. Administrative Code 7–6–4, the Coopers agreed to the following restrictions:

 1. Access to the site by the public or domestic pets will not be allowed for eighteen (18) months following the last wastewater application.

 2. Access by dairy animals for forage or pasture will be prevented and no grazing shall be allowed for nine (9) months following the last wastewater application.

 3. Access by other livestock for forage or pasture will be prevented and no grazing shall be allowed for two (2) months following the last wastewater application.

 \* \* \* \* \* \*

 7. Under no circumstances shall crops or forage with wastewater on them be harvested or grazed regardless of time elapsed since the last wastewater application.

*Record* at 168.

Coopers' agricultural goals. For these reasons, they claim, the trial court was not clearly erroneous in determining the Coopers' proposed use was commercial.

For reasons discussed below, these arguments do not persuade us that the Coopers' proposed use is commercial, and we are left with a definite and clear conviction that the trial court's judgment is clearly erroneous.

It is true that Cooper Septic Tank Service must somehow dispose of the waste it collects. It is also undeniable the business will save disposal fees to the extent that it is able to divert waste from the sewage treatment center to the tract of land in question. We fail to see, however, how this in and of itself converts the intended fertilization process the Coopers wish to employ from an agricultural use into a commercial use.

In *Day v. Ryan, supra,* we were confronted with a situation in which a party grew crops and raised livestock, in addition to buying and selling livestock. The livestock buying and selling aspect of the operation was more than incidental. Nevertheless, we held "[t]he trading of livestock raised elsewhere, while more than an incidental portion of the Ryan's activities, did not work a transformation of the basic agricultural nature of the Ryan's use of the property." *Id.* at 81. We reasoned that just as a retail use is not destroyed by the slaughter of animals on the premises, citing *Petros v. Superintendent and Inspector of Bldgs. of Lynn* (1940), 306 Mass. 368, 28 N.E.2d 233, and *Williams v. Schehl* (1919), 84 W.Va. 499, 100 S.E. 280, so livestock trading in an agricultural environment does not automatically destroy the agricultural nature of a use. To hold otherwise would be "untenable." *Day* at 81.

So it is in the case before us. We observe there is no question that once accomplished, the Coopers' raising livestock, cultivating hay, and creating a pasture will be agricultural uses for purposes of zoning ordinances. *Record* at 164 (Zoning Regulations at 2, 15). Neither can there be any reasonable dispute that the application of fertilizer to one's land to promote crop growth is likewise an agricultural activity

permissible on agriculturally zoned land. *County of Grundy v. Soil Enrichment Materials Corp.* (1973), 9 Ill.App.3d 746, 292 N.E.2d 755.

Applying the reasoning of *Day,* we hold the Coopers' application of fertilizer obtained from their business does not transform the use of their land from agricultural to commercial. The application of fertilizer to land is an agricultural activity allowable on land agriculturally zoned. It is untenable that the Coopers would be allowed to apply septic waste as fertilizer to their land if purchased from a rival competitor but not allowed to apply septic waste as fertilizer to their land if they obtained it from their own business. Yet this would be the result if we were to uphold the trial court's factual finding.

We agree with the Coopers that it is irrelevant whether or not they have any prior agricultural background. It is likewise beside the point that no farming or livestock raising has yet been attempted on the property, because the issue is whether the application of Cooper Septic Tank Service sewage to the Coopers' tract of land is a commercial use or an agricultural use. Were we to employ the neighbors' reasoning, we would have to deny the Coopers the use of their land forever, because without fertilizer, they could not grow crops, and without crops, there could be no need for fertilizer. That the land is not currently being used for crops or livestock does not alter its fertilization from being an agricultural use.

We further observe that the state's restrictions do not affect the classification of the land for zoning purposes one way or another. The neighbors argue that the restrictions severely limit if not completely curtail the Coopers' agricultural goals. We disagree. Restrictions one through three simply dictate at what point in time the land may be utilized after the last application of wastewater. Restriction seven merely prohibits the harvesting or grazing of crops or forage that have been treated. The restrictions regulate what happens *after* the application of wastewater, not be-

fore. They do not render the Coopers' plan "not possible," as the neighbors assert.

■ Our system of law favors the free use of land. Zoning regulations which inhibit the use of real property are strictly construed because they are in derogation of the common law. *Merrillville Board of Zoning Appeals v. Public Storage, Inc.* (1991), Ind.App., 568 N.E.2d 1092, 1097. The Jennings County Unified Zoning Regulations allow agricultural use; the Coopers' land is currently zoned agriculturally. The Coopers are entitled to make agricultural use of their agriculturally zoned property. The application of fertilizer is an agricultural use. The fact that the application serves a commercial interest does not transform what is otherwise an agricultural use into a commercial use.

In *Grundy, supra,* the Illinois Appellate Court faced issues nearly identical to those before us. In *Grundy,* Soil Enrichment Materials Corporation (SEMCO) had a $2.5 million contract to remove digested sludge from a Chicago area sewage treatment plant. SEMCO had contracted with numerous landowners in Grundy County to spread sludge on the landowners' agriculturally zoned farm land without cost to the landowners. The county sought to prevent this activity, alleging that the primary purpose of SEMCO's operation was sludge disposal, which the county contended was not an agricultural use. The trial court agreed.

Noting there was no testimony that digested sludge was not a fertilizer or that the application of digested sludge on farm lands was not a properly recognized agricultural purpose, the appellate court held that the spreading of digested sludge for fertilization purposes was an agricultural use. As for the alleged commercial aspect of SEMCO's operation, the court wrote

> The fact that an organization may have many major objectives which have no agricultural connection would not operate to characterize the sale or gift of a fertilizer if, in fact, the fertilizer as applied has an agricultural purpose. The issue is not what [SEMCO's] main business interest is but solely whether or not the application and use of digested sludge on farm lands is serving an agricultural purpose.

*Id.* 292 N.E.2d at 759–60. We agree entirely.

The application of septic waste and sewage sludge to land for the purposes of fertilization is not an open and shut case, as the neighbors argue. While we understand the neighbors' apprehensions, this method of fertilization is both commonplace and highly regarded when done properly.[4]

We hold that the trial court's granting of the permanent injunction in this case amounted to an abuse of discretion, because the legal basis of the injunction, that the Coopers' use was commercial, was clearly erroneous. We therefore reverse

---

4. *See generally* National Fertilizer Development Center, *Sewage Sludge: A Resource for Cities and Agriculture,* (1983); U.S. Department of Agriculture, *Utilization of Sewage Sludge Compost as a Soil Conditioner and Fertilizer for Plant Growth,* (1983); U.S. Environmental Protection Agency, *Production of Non-Food Chain Crops with Sewage Sludge,* (1981); U.S. Environmental Protection Agency, *Sludge: Recycling for Agricultural Use,* (1982); Berry, *Utilization of Municipal Wastewater for the Culture of Horticultural Crops,* 15 HORTSCIENCE 169 (Apr.1980); Day, *Alfalfa Hay Grown with Municipal Wastewater and Pump Water,* 11 JOURNAL OF ENVIRONMENTAL QUALITY 23 (Jan.–Mar.1982); Elliott, *Land Application of Municipal Sewage Sludge,* 41 JOURNAL OF SOIL & WATER CONSERVATION 5 (Jan.–Feb.1986); Harper, *City Applies Sludge on Cropland,* 2 SOIL & WATER CONSERVATION NEWS 8–9 (1981); *Healthy Future for Sludge Composting,* 30 BIOCYCLE 28 (Dec.1989); Morgan, *Sewage Sludge: Processing and Marketing Converts Problem into Beneficial Products,* 15 HORTSCIENCE 168 (Apr.1980); Nessel, *Wastewater Enrichment Increases Mature Pond Cypress Growth Rates,* 28 FOREST SCIENCE 400 (June 1982); *One Man's Sludge is Another Man's Harvest,* 134 WATER ENGINEERING & MANAGEMENT 22 (Dec.1987); Ridler, *Community Irrigates with Wastewater, Saves Money,* 2 SOIL & WATER CONSERVATION NEWS 8 (1991); *What to Do with Poo,* 16–17 ALTERNATIVES 12 (Mar.–Apr.1990); Wilson, *Municipal Wastewater Sludge as a Soil Amendment for Revegetating Final Landfill Cover,* 40 JOURNAL OF SOIL & WATER CONSERVATION 296 (May–June 1985).

the trial court, and order the injunction dissolved.

Reversed.

ROBERTSON and BARTEAU, JJ., concur.