**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Oct 11 2012, 8:31 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MICHAEL F. VERTESCH**
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**MELINDA K. JACKMAN-HANLIN**
Plainfield, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| SHELLIE P. APP, | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No.  67A01-1203-DR-99 |
| | ) | |
| WILLIAM APP, JR., | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE PUTNAM SUPERIOR COURT
The Honorable Charles D. Bridges, Judge
Cause No. 67D01-1006-DR-152

**October 11, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

Appellant-respondent Shellie P. App (Wife) appeals the trial court's order dissolving her marriage from appellee-petitioner William App, Jr., (Husband). More particularly, Wife argues that the trial court erred by excluding pre-marital assets from the marital estate and by failing to equally divide the marital estate. Additionally, Wife maintains that the trial court erred by concluding that she is not disabled and, therefore, not entitled to permanent maintenance and attorney fees.

Pertaining to issues surrounding their son, Wife contends that the trial court erred by ordering her to pay child support without receiving and adopting a verified child support obligation worksheet or entering parallel findings and conclusions. Similarly, Wife asserts that the trial court erred by entering a post-secondary educational expense order without receiving and adopting a verified post-secondary educational expense worksheet or entering parallel findings and conclusions. Finally, Wife contends that the trial court erred by failing to specify which party should claim their son as a dependent for filing federal and state income tax returns.

Concluding that the trial court erred by entering a post-secondary educational expense order in the absence of a worksheet or its own findings and conclusions and by failing to specify which parent should claim the child as a dependent for tax purposes but finding no other error, we affirm in part, reverse in part, and remand with instructions.

2

Husband and Wife were married on July 9, 1999. There were no children born of this marriage; however, Husband adopted Wife's two minor children during the marriage. Only L.A. was not emancipated at the time of the dissolution.

## Property and Debt

In 1989, Husband was gifted land from his father located at 3026 South County Road 550 in West Greencastle. A few years later, Husband purchased a section of land from a neighbor to allow Husband to construct a driveway. Beginning in April 1996, Husband began building a house on this property. When Husband was building his home, he took out a construction loan. After receiving the construction loan, Husband began taking the necessary steps to secure a mortgage on the residence.

On February 24, 1997, Husband took out the first mortgage on the property. This mortgage was for $93,000. In 2004, Husband refinanced his mortgage for $157,500. Wife's name was added to the deed at that time, but she was not included on the mortgage. This refinanced mortgage consolidated several debts of the marriage, including, but not limited to, vehicles and credit cards.

## Employment

Husband is a member of the Iron Workers Union and receives work by being placed on jobs through the Union Hall. The amount of work Husband receives varies, but he rarely works fifty-two weeks a year. The amount that Husband is paid per hour

also varies. When Husband is not working, he receives $390 in weekly unemployment income.

Husband began working for the Iron Workers Union before marrying Wife, but he left in 1995 to work for Chrysler. Husband worked for Chrysler until 2007 when he returned to the Iron Workers Union. Husband has earned retirement benefits through the Iron Workers Union and through Chrysler.

Wife was not employed outside the home throughout the marriage. The last time that Wife held a job was in 1999, when the Husband and Wife were married. In 2009, Wife obtained a substitute teacher's license, but has not used it. Wife has rarely worked outside of the home throughout her adult life.

In 2007, Wife was in a vehicle accident. In 2011, she filed for Social Security Disability, but her application was denied. Wife requested a review of the initial determination, and she was denied again after the review process. Wife has not attempted to obtain employment.

<u>Dissolution</u>

On June 24, 2010, Husband filed for dissolution of marriage from Wife. As noted above, at the time of the dissolution, only one child, L.A., was not emancipated. L.A. was eighteen years old, still in high school, and under the care and control of Husband. The parties agreed that Husband would be awarded primary physical custody of L.A. Wife was awarded parenting time with L.A. and was ordered to pay child support according to the Indiana Child Support Guidelines. Throughout the separation period,

Wife was not ordered to pay any child support, and Wife did not assist in supporting L.A. during the separation period.

As for the property settlement, Wife requested that she be awarded a portion of Husband's retirement benefits that were earned before their marriage and equity in the marital residence that had accrued before the marriage. Wife also requested that she be awarded permanent maintenance because of her disability, which she claimed did not permit her to obtain employment. Additionally, Wife requested that she be awarded over 50% of the marital estate and over $17,000 in attorney fees.

On November 22, 2011, the trial court held a final hearing. Following this hearing, Husband and Wife submitted their proposed findings of fact and conclusions of law as ordered by the trial court. On February 10, 2012, the trial court issued its findings of fact and conclusions thereon in its decree dissolving the marriage, awarding custody of L.A. to Husband, and ordering Wife to pay child support and post-secondary educational expenses.

### The Decree

In its order, the trial court noted that Husband had received a $100,000 buy-out when he left Chrysler and that he had used these funds to buy "a swimming pool for the kids to enjoy at the marital residence, pa[y] for concrete flooring for the barn located at the marital residence, and pa[y] $30,000 towards the outstanding mortgage on the marital residence." Appellant's App. p. 18.

Additionally, the trial court found that the parties had refinanced the marital residence in 2004 for $157,500, adding approximately $64,500 debt against the marital residence. On March 2, 2011, the marital residence appraised at $180,000, and the mortgage payoff was $105,196.42 on June 1, 2010. Husband made all the mortgage payments from the date he filed for dissolution until the final hearing date.

The trial court also observed that although the marital residence had increased in value by $37,000 during the marriage, the debt against the marital residence had increased by $12,000 during the marriage. Moreover, the debt against the marital residence would have been much higher if $30,000 of Husband's Chrysler buy-out had not been used to pay down the mortgage.

Furthermore, the trial court noted that both parties had personal property that they had owned prior to the marriage. Specifically, Husband owned two tractors and "Wife presented an exhibit of assets she owned prior to the marriage." Appellant's App. p. 20. The trial court determined that "[n]either parties' pre-marital or post-filing assets will be included in the marital estate and shall be awarded to the respective party who earned the asset." Id.

Husband was awarded two checking accounts and one savings account at North Salem State Bank. Husband was also ordered to assume responsibility for three credit cards. Wife was awarded a $20,062.47 property settlement to equalize the distribution and ordered to pay any outstanding medical expenses in her name or that were incurred in

her benefit. The trial court determined that the parties were responsible for their own attorney fees.

Wife was denied a disproportionate division of the marital estate and post-dissolution maintenance. The trial court concluded that "Wife presented no medical evidence that her condition prevents her from being able to obtain employment to support herself." Id. at 21. In sum, the division of the marital estate and debts was awarded by the trial court according to Exhibit A, which was attached to the order. Id. at 24-26.

Wife was ordered to pay $41.00 weekly in child support for L.A. and one-third of the cost of post-secondary educational expenses if he attends. Any grants, scholarships, and financial aid were to be applied to L.A.'s portion first before being equally applied to Husband's and Wife's portions. Wife now appeals.

DISCUSSION AND DECISION

I. Standard of Review

Wife argues that the trial court erred by ordering an unequal division of the marital assets, declining to award her permanent spousal maintenance and attorney fees, ordering child support and post-secondary educational expenses without the appropriate worksheets or parallel findings, and failing to specify which party should receive L.A. as a dependent for purposes of filing income tax returns. Here, the trial court entered findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52(A). When a trial court enters findings of fact and conclusions thereon, we first determine whether the

7

evidence supports the findings and then whether the findings support the judgment. Breeden v. Breeden, 678 N.E.2d 423, 425 (Ind. Ct. App. 1997).

On appeal, a reviewing court may not set aside the trial court's judgment unless it is clearly erroneous. In re Marriage of Nickels, 834 N.E.2d 1091, 1095 (Ind. Ct. App. 2005). Findings are clearly erroneous when a review of the record leaves one firmly convinced that a mistake has been made. Cooper v. Calandro, 581 N.E.2d 443, 445 (Ind. Ct. App. 1991).

## II. Division of Assets

Indiana Code section 31-15-7-5 governs the division of marital assets upon dissolution and provides:

> The court shall presume that an equal division of the marital property between the parties is just and reasonable. However, this presumption may be rebutted by a party who presents relevant evidence, including evidence concerning the following factors, that an equal division would not be just and reasonable:
>
> (1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.
>
> (2) The extent to which the property was acquired by each spouse:
>
> (A) before the marriage; or
>
> (B) through inheritance or gift.
>
> (3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.

8

(4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.

(5) The earnings or earning ability of the parties as related to:

(A) a final division of property; and

(B) a final determination of the property rights of the parties.

The reviewing court is to presume that the trial court considered all of the evidence in the record and properly applied the statutory factors. Shumaker v. Shumaker, 559 N.E.2d 315, 318 (Ind. Ct. App. 1990). The trial court is not required to list those factors that do not justify an unequal division of the property, but rather, need only state its reasons for deviating from the presumption of an equal division. Id.

## A. Marital Residence

The trial court concluded that the marital residence appraised for $143,000 when Husband and Wife married. Appellant's App. p. 18 (Finding 8 stating that "[a]ccording to Wife's testimony, the home and property appraised for $143,000 at the time of the marriage"). However, the marital residence was mortgaged for $93,000 when the parties married. Id.; Appellee's App. p. 1-7.

At the time the parties married, the marital residence had accumulated approximately $50,000 in equity. More particularly, according to the stipulated appraisal, the marital residence appraised for $180,000 nine months after the petition for dissolution was filed, meaning that that the marital residence increased $37,000 in value during the marriage. Appellee's App. p. 20-40.

9

On June 1, 2010, just twenty-three days before the petition of dissolution had been filed, the pay-off on the mortgage against the marital residence was $105,196.42. Id. at 41. This pay-off amount indicates that the debt against the marital residence had increased by over $12,000. The trial court also noted that the debt against the marital residence would have been much higher if "$30,000 of Husband's Chrysler buy-out had not been paid down on the mortgage." Appellant's App. p. 19. Likewise, the trial court observed that Husband had made all mortgage payments from the date of filing to the final hearing date. Id. at 18. Accordingly, the trial court awarded the marital residence and the outstanding debt to Husband. Id. at 24-25. In light of these facts and circumstances and the way in which the trial court divided the remaining assets, we cannot say that the trial court's division of the marital residence leaves us firmly convinced that a mistake has been made. Consequently, this argument fails.

### B. Chrysler Benefit Pension

The parties agreed to and stipulated to financial evaluations being performed by Dan Andrews on Husband's Chrysler Defined Pension Benefit Annuity. According to this financial evaluation, as of the June 24, 2010 filing date, the annuity had a present value of $59,352.74. Appellant's App. p. 45. Andrews concluded that $38,036.19 was earned during the marriage. Id. The trial court evenly divided the $38,036.19 between the parties, indicating that it did not exclude the annuity from the marital estate, but rather, that it included the appreciation of the pre-marital asset. Id. at 24. As a result, we cannot say that the trial court's distribution of this asset was clearly erroneous.

## C. Iron Worker's Pension Trust

Similar to the Chrysler annuity, the parties stipulated to Andrews performing financial evaluations on Husband's Iron Worker's Defined Benefit Pension. Andrews concluded that as of the June 24, 2010 filing date, this pension had a present value of $140,414.02. Appellant's App. p. 56. Andrews also determined that the pension had earned $36,507.64 during the marriage. Id. The trial court evenly divided the $36,507.64, showing that it was not excluded from the marital estate. Id. at 24. Instead, the trial court included the appreciation of the premarital asset, and we do not conclude that this was clearly erroneous.

## D. Other Personal Property

Finding 16 referenced a Ford Jubilee tractor and a Kubota tractor owned by Husband. Appellant's App. p. 19. The Ford tractor was bought and paid for before the marriage while the Kubota tractor was purchased before the marriage and paid for only two months after the marriage. Id. at 19-20. The Ford tractor was sold for $800 after the filing of the dissolution and the Kubota tractor was valued at $7,500.

As stated before, Wife presented her own exhibit of assets that she owned prior to the marriage, including but not limited to: a 1994 Chevy Lumina valued at $3,000, a bedroom set valued at $700, jewelry valued at $500, and electronics valued at $500. In total, Wife valued her premarital assets at $6,510. Appellant's App. p. 43.

In this case, Finding 17 stated that "Wife presented an exhibit of assets she owned prior to the marriage. Neither parties' pre-marital or post-filing assets will be included in

11

the marital estate and shall be awarded to the respective party who earned the asset." Appellant's App. p. 20. Nevertheless, as discussed above, the appreciation of the pre-marital assets was evenly divided. Additionally, because the parties' personal property was of comparable value, we cannot say that we are left with a firm conviction that an error was made.

### E. The Property Distribution as a Whole

Our Supreme Court has opined that the "trial court's disposition is to be considered as a whole, not item by item." Fobar v. Vonderahe, 771 N.E.2d 57, 59 (Ind. 2002). When looking at what the trial court did as a whole, as outlined in Exhibit A, which was attached to the dissolution decree, Wife has failed to demonstrate that the property division is clearly erroneous. While Husband was awarded the bank accounts, he was also given the responsibility of three credit cards with outstanding balances. Perhaps most compelling, Wife received a $20,062.47 property settlement to equalize the distribution. Under these circumstances, Wife's arguments that the trial court's distribution of the marital estate was erroneous are unavailing.

### III. Permanent Maintenance

Wife contends that the trial court erred by not finding that she was disabled and, therefore, entitled to permanent maintenance. Indiana Code section 31-15-7-1 grants the trial court authority to order maintenance in a dissolution decree, and Indiana Code section 31-15-7-2 sets out the findings that the court may consider when deciding whether to award maintenance. This statute states, in relevant part,

12

> If the court finds a spouse to be physically or mentally incapacitated to the extent that the ability of the incapacitated spouse to support himself or herself is materially affected, the court may find that maintenance for the spouse is necessary during the period of incapacity, subject to further order of the court.

I.C. § 31-15-7-2.

Claims for "incapacity maintenance must be evaluated by giving a strict if not literal interpretation to the language of the statute." Cannon v. Cannon, 758 N.E.2d 524, 526 (Ind. 2001). To award maintenance on the basis of incapacity, the trial court must make a threshold determination that (1) the spouse is physically or mentally incapacitated, and (2) that the incapacity materially affects the spouse's self-supportive ability. Bizik v. Bizik, 753 N.E.2d 762, 769 (Ind. Ct. App. 2001).

In the instant case, Wife applied for Social Security Disability in April 2011. Tr. p. 157. On August 4, 2011, the Social Security Administration denied Wife's request for Supplemental Security Income payments based upon disability. Appellant's App. p. 71-74. Wife requested a review of her application, but her claim was again denied. Tr. p. 189-90.

More particularly, the doctors who reviewed Wife's medical records and history on behalf of the Social Security Administration found that although Wife does have a benign brain tumor, the "tumor is not near the areas of the brain which govern balance or vision, . . . is not exerting pressure, and has been treated with radiation therapy to reduce its size." Appellant's App. p. 74. In addition, the doctors found that Wife's "heart is functioning within normal limits" and that although her condition prevents her from

doing work that requires "climbing ropes, ladders or scaffolds, . . . [her] overall medical condition allows the performance of other work." Id. Moreover, Wife testified that she had not even attempted to gain employment to determine if she would be able to perform any type of work. Tr. p. 190. Under these facts and circumstances, we cannot conclude that the trial court erred by denying Wife's request for maintenance.

## IV Attorney Fees

Wife also contends that the trial court erred by denying her request that Husband be responsible for her attorney fees. Indiana Code section 31-15-10-1 provides that a trial court may order a party to pay a reasonable amount to the other party for the cost of maintaining or defending any action in dissolution proceedings.

In deciding whether to grant a request for attorney fees, "the trial court must consider the resources of the parties, their economic condition, the ability of the parties to engage in gainful employment and to earn adequate income, and other factors that bear on the reasonableness of the award." Hartley v. Hartley, 862 N.E.2d 274, 286 (Ind. Ct. App. 2007). These factors promote the legislative purpose of the statute, which is to give the party, who would otherwise not be able to afford representation, the ability to retain an attorney. Id. at 286-87.

Here, the trial court denied Wife's request that Husband pay her legal fees, which totaled over $17,000. Additionally, the trial court's denial of Wife's request for disability maintenance is indicative of its belief that Wife has the ability to engage in gainful employment but chooses not to do so. But most compelling, Wife's legal fees equal

almost one-third of Husband's annual gross income of $60,000. In light of the fact that Husband is responsible for the mortgage, debts on three credit cards, and supporting the parties' teenage son, the trial court did not err in denying Wife's request for attorney fees.

V. Child Support

Wife maintains that the trial court erred by ordering her to pay $41 per week in child support without receiving and adopting a verified child support obligation worksheet or entering parallel findings and conclusions. Generally, child support awards that comport with the Indiana Child Support Guidelines bear a rebuttable presumption of correctness. Quinn v. Threlkel, 858 N.E.2d 665, 670 (Ind. Ct. App. 2006). Conversely, awards that deviate from the guidelines must be supported by proper written findings justifying the deviation. Id.

Here, Husband submitted a proposed child support obligation worksheet with his proposed findings of fact and conclusions of law. Appellant's App. p. 42. In his worksheet, Husband imputed Wife's income as minimum wage at forty hour per week. Id. Additionally, Husband entered into evidence his 2010 income tax returns. In Finding 5, the trial court determined that Husband's yearly average gross income was $60,000. Id. at 17.

In the dissolution decree, the trial court ordered Wife to pay $41 per week in child support, which is the amount that Husband arrived at on his proposed worksheet with him earning $60,000 annually and Wife earning minimum wage and working forty hours per week. Notwithstanding Wife's unemployment, the trial court has the discretion to impute

15

income to an individual who is intentionally underemployed or unemployed. Ind. Child Support Guideline 3(A)(3). It is undisputed that Wife was unemployed. Tr. p. 54.

From these facts and circumstances, it seems clear that it was the trial court's intent to adopt Husband's proposed child support obligation worksheet but that it merely failed to include a copy of the worksheet in the final order. Consequently, we find no error in requiring Wife to pay weekly $41 child support payments but remand with instructions to the trial court to include the child support obligation worksheet that it essentially adopted.

## VI. Post-Secondary Educational Expenses

In a related argument, Wife asserts that the trial court erred by entering an educational support order without receiving and adopting a post-secondary educational worksheet or entering parallel findings and conclusions. Indiana Code section 31-16-6-2 grants trial courts the authority to award post-secondary educational expenses, providing in relevant part:

> The child support order or an educational support order may also include, where appropriate:
>
> (1) amounts for the child's education in elementary and secondary schools and at postsecondary educational institutions, taking into account:
>
>     (A) the child's aptitude and ability;
>
>     (B) the child's reasonable ability to contribute to educational expenses through [work, obtaining loans, and obtaining other sources of financial aid]; and
>
>     (C) the ability of each parent to meet these expenses;

16

(b) If the court orders support for a child's educational expenses at a postsecondary educational institution under subsection (a), the court shall reduce other child support for that child that:

(1) is duplicated by the educational support order; and

(2) would otherwise be paid to the custodial parent.

Additionally, Guideline 8(b) notes that the "impact of an award of post-secondary educational expenses is substantial upon the custodial and non-custodial parent and a reduction of the Basic Child Support Obligation attributable to the child in question will be required when the child resides on campus or otherwise is not with the custodial parent."

Guideline 8(c) discusses the use of the post-secondary education worksheet, pointing out that it makes two determinations: (1) Section One determines each parent's obligation for post-secondary educational expenses based upon his or her pro rata share of the weekly adjusted income from the child support obligation worksheet after contribution from the student toward those costs; (2) Section Two determines the amount of each parent's weekly support obligation for the student who does not live at home year round.

In this case, regarding post-secondary educational expenses, the trial court's order stated:

> If [L.A.] attends post-secondary education, [L.A] shall be responsible for 1/3 of the cost of the post-secondary education costs, Husband shall be responsible for 1/3 of the cost of the post-secondary education costs, and

17

> Wife shall be responsible for the remaining 1/3 of the post-secondary education costs. Any grants, scholarships, and/or financial aid shall first be applied towards [L.A.]'s 1/3 before being applied equally to the parent's 1/3.

Appellant's App. p. 22 (emphasis added).

In Quinn, a panel of this Court reversed the trial court's post-secondary educational order. 858 N.E.2d at 670. The Quinn Panel reasoned that "the trial court here neither obtained and adopted a party's verified post-secondary education expense worksheet, nor did it make findings paralleling the worksheet. Instead, the court made general findings to the effect that [Mother] should pay 29% of college expenses and [Father] 71%[.]" Id. at 671. Additionally, the panel observed that there were no findings regarding the estimated cost of attending college, what percentage of the cost should be borne by the child, and what type of financial aid the child was expected to apply for and receive. Id.

Here, the circumstances are even more problematic. Unlike the child support order, there is no indication in the record that the trial court received a post-secondary educational expense worksheet from either party. Additionally, the trial court could not make its own findings that parallel the worksheet regarding the cost of attending college because L.A. was not even sure he wanted to attend college. Tr. p. 50. Indeed, the trial court found that "[i]t is not known at this time whether [L.A.] will be attending postsecondary education costs [sic]." Appellant's App. p. 22. Therefore, we reverse the

trial court's order regarding post-secondary educational expenses and remand for clarification and recalculation.[1]

## VII. Tax Consequences

Wife contends that the trial court erred by failing to specify which party would claim L.A. as a dependent on federal and state income tax returns. Additionally, Wife points out that the trial court made no findings relevant to this determination.

Indiana Code section 31-16-6-1.5 directs that a "court shall specify in a child support order which parent of a child may claim the child as a dependent for purposes of federal and state taxes." The statute also instructs that the court shall consider the marginal tax rate of each parent, the income of each parent, the age of the child and the number of years that the child could be claimed as a dependent, each parent's percentage of the costs of supporting the child, the financial aid benefit of post-secondary education expenses, the financial burden each parent assumed under the property settlement in a dissolution proceeding, and any other relevant factors. I.C. § 31-16-6-1.5(b).

Husband agrees with Wife that the trial court erred by failing to specify which parent would receive L.A. as a dependent for purposes of filing federal and state income tax returns. However, Husband highlights Wife's testimony that she believed Husband should be awarded L.A. as a dependent. Tr. p. 147. Accordingly, Husband requests that we direct the trial court to enter an order "that Husband shall be able to claim L.A. as a

---

[1] We also note that on remand, if the trial court orders post-secondary educational expenses, it should consider the impact that this order will have on its basic child support order. See Child Supp. G. 8(b).

dependent for purposes of filing Federal and State income tax returns as long as L.A. is able to be claimed." Appellee's Br. p. 7.

Here, as Wife points out, the trial court failed to make any findings regarding which parent may claim L.A. on federal and state income tax returns. Therefore, we remand with instructions to the trial court to enter specific findings in its order stating which parents shall claim L.A. on federal and state income tax returns.

CONCLUSION

In sum, we determine that the trial court did not err in dividing the marital estate. Likewise, Wife has failed to demonstrate that she is entitled to permanent maintenance or to attorney fees.

Regarding issues surrounding L.A., the trial court did not err in ordering Wife to pay $41 per week in child support, but it did err by entering an order for post-secondary educational expenses without the benefit of a post-secondary educational expense worksheet or parallel findings. Similarly, the trial court erred by failing to make findings regarding which parent would claim L.A. as a dependent on federal and state income taxes and specifying in the order which parent may claim L.A. Accordingly, we affirm in part, reverse in part, and remand with instructions, that the trial court clarify and recalculate its order regarding post-secondary educational expenses and enter findings and specify in its order which parent will claim L.A. as a dependent for federal and state tax income purposes.

Affirmed in part, reversed in part, and remanded with instructions.

ROBB, C.J., and BRADFORD, J., concur.